THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT MARTIN, Defendant-Appellant.

First District (3rd Division)    No. 58963

Opinion filed February 16, 1977.—Rehearing denied April 18, 1977.

James J. Doherty, Public Defender, of Chicago (Matthew J. Beemsterboer, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Eugene J. Rudnik, Jr., Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Defendant, Robert Martin, was indicted for murder and two counts each of attempt murder and aggravated battery. A jury found defendant guilty of murder, two counts of attempt murder, and one count of aggravated battery. The circuit court of Cook County entered a sentence of 35 to 50 years for murder and 10 to 20 years on each count of attempt murder, with the terms to run concurrently. No sentence was imposed upon the conviction of aggravated battery. Defendant appeals from all his convictions, raising the following contentions for our considerations: (1) the trial court erred in refusing to suppress defendant's written statements as the fruit of a warrantless arrest made without probable cause; (2) the trial court erred in refusing to suppress defendant's involuntary written statement; (3) defendant was not accountable for the actions of his co-indictee; (4) the trial court erred in failing to give instructions on its own motion as to the lesser included offenses; (5) the conviction for aggravated battery must be vacated; and (6) the sentence of 35 to 50 years was excessive.

We affirm the murder and attempt murder convictions and we vacate the aggravated battery conviction.

The record reveals the following pertinent facts. Robert Martin and Nathson Fields were indicted for a number of offenses which allegedly took place on the evening of October 1, 1971, in Dixmoor, Illinois. Both men were arrested on October 5, and both gave statements to the police. Martin's statement contained the following. Martin and Fields shot at a car which contained members of a rival street gang, but ran from the scene upon emptying their pistols. Two of the car's occupants, Charles Merriweather and Larry Watkins, gave chase. Merriweather caught up with Martin and started hitting him. Fields rescued Martin by striking Merriweather over the head with a pistol, and Martin had the opportunity to reload his pistol. By this time, Watkins reached the scene, carrying either a rock or a brick. Robert Martin shot Watkins in the shoulder. The written statement recited that at this point Martin "turned around and run and Nathson told me to shoot [Watkins] in the head, and, you know, and so I told him no, I couldn't do that because, you know, and so, Nathson got the gun from me and he walked up to the boy and shot him in the head." Merriweather escaped with a gash in his head, but alive. Shortly thereafter, Martin and Fields thought they saw him in the darkness and

Fields opened fire. At trial Charles Merriweather testified as to what happened, which was consistent with Martin's statement. George Wood, the innocent bystander who was walking down the street and was mistaken for Merriweather, testified as to the gunshot wounds he received that night. After trial by jury, Martin was found guilty of murdering Larry Watkins, guilty of attempt murder of Charles Merriweather, not guilty of the aggravated battery of Merriweather, and guilty of both aggravated battery and attempt murder of George Wood. Martin was sentenced to concurrent terms of 35 to 50 years for murder, and 10 to 20 years on each count of attempt murder. No sentence was imposed upon the conviction for aggravated battery.

■■ The first question on appeal is whether the trial court erred in denying Martin's motions to quash the arrest and suppress the statements and other evidence obtained as a result of the arrest. The defense position was that the arrest was unlawful since it was made without probable cause. At the hearing on the motion to quash the arrest, Martin testified that when he was arrested at about 5:30 on the afternoon of October 5, 1971, he was sitting in a car in front of a friend's house in Robbins, Illinois. At that time, he was told by Robbins police officers to get in their car. He was then transported to the Dixmoor police station, where he was questioned. By testifying that he was doing nothing unusual when arrested without a warrant, defendant made a *prima facie* showing that the police lacked probable cause. The burden of going forward with evidence shifted to the State. (*People v. Moncrief* (1971), 131 Ill. App. 2d 770, 268 N.E.2d 717.) The State, therefore, had the burden of producing evidence sufficient to show that the police had reasonable grounds to believe that Robert Martin had committed an offense. Ill. Rev. Stat. 1973, ch. 38, par. 107—2(c).

The State's primary witness was the Dixmoor police officer who investigated the shootings and caused Robert Martin to be arrested by the Robbins Police Department. Officer Robert Vinson testified to the following facts. He was assigned to the case and began his investigation the morning after the shooting. After speaking with a number of persons who might have knowledge of the identities of the two offenders, Vinson received descriptions from two persons. At the hearing, he related the out-of-court statements of these two unnamed persons. The first person said that she was in the car during the shooting, and she gave general physical descriptions: both offenders were male Negroes age 18 or 19, one had a black hat and was 5 feet nine, and the other wore a light-colored suit and had a tall Afro hairdo. The second person said that he was on the street while shots were being fired at the car and that he recognized the shooters as Robert Martin and Nathson Fields. He also identified photographs of Martin and Fields shown him by Vinson. He

recognized the men because he had known them for a long time, and did not want to testify because he was afraid. Nonetheless, he gave the information after Vinson promised that his name would not be revealed. No compensation or other reward was offered. He further testified that based upon the information received from the unnamed male on October 2, Vinson then asked the Robbins police to bring Martin and Fields to Dixmoor for questioning. Three days later, Martin was taken into custody.

On cross-examination, Vinson said that the unnamed male had been an informer in an unknown number of cases, and had been responsible for giving information which led to one prosecution for unlawful use of weapons. The officer's recollection of the precise nature of the information received in the past was sketchy and uncertain. Vinson also testified on cross-examination that he made no efforts to obtain a warrant, and that if the Robbins police had not brought in Martin, he would not have gone for a warrant.

The general rule in such cases was stated by the Illinois Supreme Court in *People v. Peak* (1963), 29 Ill. 2d 343, 348, 194 N.E.2d 322:

> "Probable cause for arrest exists when the facts and circumstances within the arresting officer's knowledge, and of which he had reasonable and trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in believing that an offense has been committed, and that the person arrested is guilty."

Officer Vinson knew that a number of crimes had been committed. The issue for our consideration is whether the information given to Officer Vinson by the unnamed male informant was so reasonable and trustworthy as to constitute probable cause to arrest Robert Martin.

■■■ An arresting officer may have reasonable grounds for believing a defendant committed a crime, based upon information supplied by another person, an informer. An arrest may be made upon such reasonable grounds without a warrant. At a hearing on a motion challenging the validity of such an arrest, however, the State must prove that the information so received from another was reasonable and trustworthy. The trial judge then has the opportunity to determine whether the information in the police officer's knowledge was trustworthy and whether probable cause existed for the warrantless arrest. (*People v. McCray* (1965), 33 Ill. 2d 66, 210 N.E.2d 161, *aff'd*, 386 U.S. 300, 18 L. Ed. 2d 62, 87 S. Ct. 1056.) The primary consideration is whether, when the constitutionality of an arrest is challenged, the prosecution can prove with specificity what the informer said and why the police officer thought the information was credible. *Beck v. Ohio* (1964), 379 U.S. 89, 13 L. Ed. 2d 142, 85 S. Ct. 223.

The State's principal contention is that Officer Vinson was justified in relying upon "the information supplied by an anonymous citizen-informer who witnessed the shootings and who knew the defendant." It is argued that information received from a citizen-informer is presumed reliable, citing *People v. Hester* (1968), 39 Ill. 2d 489, 237 N.E.2d 466, *cert. dismissed*, 397 U.S. 660, 25 L. Ed. 2d 642, 90 S. Ct. 1408, and its progeny. The defendant argues that Officer Vinson's reliance upon the unidentified male informer was unjustified and that this information was insufficient to prove the existence of probable cause. As this court noted in the related case of *People v. Fields* (1975), 31 Ill. App. 3d 458, 468, 334 N.E.2d 752, 761: "The illegality of [Fields'] arrest arose, if at all, from the unwarranted reliance by the police upon the information secured from the undisclosed source as testified by Officer Vinson." The issue thus framed is whether information received from an unidentified source, as related by a police officer at a hearing on a motion to quash an arrest, standing alone, without any showing of reliability, may be considered credible solely because it is from an anonymous eyewitness, and thereby give the police probable cause to arrest.

The citizen-informer rule first appeared in Illinois in *People v. Hester*. Therein, police officers investigating the rape-murder of a school teacher were told by the school clerk, Mrs. Considine, and another teacher, Miss Fritsch, that defendant had been seen alone in the school's hall on the morning of the crime, and that the murdered teacher had been handling a matter wherein defendant had been accused of sexual misconduct with another student. When the police officers interviewed defendant, they observed bloodstains on his clothing for which defendant gave differing explanations. Defendant was then arrested. The court stated that the police "had a right to rely upon the partly hearsay information which they received from Miss Fritsch and Mrs. Considine, and the usual requirement of prior reliability which must be met when police act upon 'tips' from professional informers does not apply to information supplied by ordinary citizens." (39 Ill. 2d 489, 514.) Nowhere is it written that the information received from the two named school employees, standing alone, constituted probable cause for Hester's arrest. The best that may be said is that the information received from Mrs. Considine and Miss Fritsch combined with the results of the police interview, *i.e.*, the bloody pants, to give probable cause for defendant's arrest. Viewed in light of the subsequent decision in *Adams v. Williams* (1972), 407 U.S. 143, 32 L. Ed. 2d 612, 92 S. Ct. 1921, it may be said that the information received from the two named employees had sufficient indicia of reliability to justify a forcible stop of the suspect. This interpretation of *Hester* is warranted in that the Illinois Supreme Court cited *People v. Lewis* (24 Cal. App. 2d 546, 49 Cal. Rptr. 579, as authority for the *Hester* rule that the police

may act upon information supplied by ordinary citizens. In *Lewis*, it was stated:

> "Horace C. Owens, who lived almost directly across from the Friendly Cleaners, was watching television at home when he heard breaking glass and a burglar alarm. He looked across the street and saw a person come out of the Friendly Cleaners, reenter a few moments later, and come out again carrying clothes. Mr. Owens' son called the police. When Officer Bryant arrived Mr. Owens went to the street and met him. While they were talking, Mr. Owens saw defendant walking along 131st Street, some 50 to 100 feet away. Mr. Owens said ' "That's him. I can tell the way he is walking." ' The officer then stopped the defendant." (24 Cal. App. 2d 546, 547-48, 49 Cal. Rptr. 579, 581.)

When the defendant gave an unsatisfactory explanation of his presence, Officer Bryant arrested him. In determining whether the officer had probable cause, it was written:

> "A citizen such as Mr. Owens, who reports a crime committed in his presence, is more than a mere informer. He is an observer of criminal activity who, by calling the police, acts openly in aid of law enforcement. Courts have not hesitated to find it reasonable for police officers to act upon the reports of such observers. * * * We do not think that in the case at bench the law required Officer Bryant to disbelieve Mr. Owens' report and allow defendant to disappear into the night." (24 Cal. App. 2d 546, 550-51, 49 Cal. Rptr. 579, 582-83.)

In subsequent cases, California courts have pursued the citizen-informer rule. The most recent refinement of the rule was made by the Supreme Court of California in *People v. Ramey* (1976), 16 Cal. 3d 263, 268-69, 127 Cal. Rptr. 629, 632, 545 P.2d 1333, 1336:

> "The courts have recognized a distinction between informers who are virtual agents of the police and 'citizen informants' who are chance witnesses to or victims of crime. The former are often criminally disposed or implicated, and supply their 'tips' to the authorities on a recurring basis, in secret, and for pecuniary or other personal gain. The latter are innocent of criminal involvement, and volunteer their information fortuitously, openly, and through motives of good citizenship. [Citations.] Because of these characteristics, the requisite showing of reliability in the case of a citizen informant is significantly less than that demanded of a police informer.
>
> It may therefore be stated as a general proposition that private citizens who are witnesses to or victims of a criminal act, absent

some circumstance that would cast doubt upon their information, should be considered reliable. This does not, of course, dispense with the requirement that the informant—whether citizen or otherwise—furnish underlying facts sufficiently detailed to cause a reasonable person to believe that a crime had been committed and the named suspect was the perpetrator; and the rule also presupposes that the police be aware of the identity of the person providing the information and of his status as a true citizen informant. [Citation.] In short, probable cause will not be provided by conclusionary information or anonymous informants, but neither a previous demonstration of reliability nor subsequent corroboration is ordinarily necessary when witnesses to or victims of criminal activities report their observations in detail to the authorities."

This is, in our opinion, a sound rule of law based upon reason.

The citizen-informer rule has been discussed by many courts, with the same conclusions being drawn. For example, the Supreme Court of Colorado discussed *Hester* and concluded:

"We now announce that henceforth, Colorado will follow the citizen-informer rule and will recognize that a citizen who is identified by name and address and was a witness to criminal activity cannot be considered on the same basis as the ordinary informant. We believe, and hold, that the constitutional safeguards afforded under the Fourth and Fourteenth Amendments to the United States Constitution, and under Article II, Section 7 of the Constitution of Colorado are met when the affidavit supporting an arrest warrant or search warrant contains the name and address of the citizen-informant who was a witness to criminal activity and includes a statement of the underlying circumstances." (*People v. Glaubman*, 175 Colo. 41, 52, 485 P.2d 711, 717.)

The Supreme Court of Idaho in turn relied upon the Colorado rule and reached the same conclusion. As discussed in *State v. O'Bryan* (1975), 96 Idaho 548, 552, 531 P.2d 1193, 1197, the *Aguilar-Spinelli* rule's constitutional safeguards are satisfied when "the affidavit supporting a search warrant contains the name and address of a citizen-informant along with a statement of underlying circumstances upon which the informant based his conclusions." Accord, *State v. Paszek* (1971), 50 Wis. 2d 619, 184 N.W.2d 836.

In *Erickson v. State* (Alaska 1973), 507 P.2d 508, a well-identified citizen witnessed a crime and told the police what he saw. The Supreme Court of Alaska held:

"We hold that a valid arrest may be made on information provided

by a 'citizen informer' and that the informer's prior reliability need not be established before the arrest. The only caveat placed on such a rule is that some of the details of the information must be verified before arrest occurs." (507 P.2d 508, 518.)

Perhaps the most concise statement of the currently recognized rule is that of the District of Columbia Circuit Court of Appeals in *Pendergrast v. United States* (D.C. Cir. 1969), 416 F.2d 776, *cert. denied*, 395 U.S. 926, 23 L. Ed. 2d 243, 89 S. Ct. 1782:

"'Other courts in some number have held that probable cause is established where (a) the victim of an offense (1) communicates to the arresting officer information affording credible ground for believing that the offense was committed and (2) unequivocally identifies the accused as the perpetrator, and (b) materially impeaching circumstances are lacking. This appeals to us as an eminently sound proposition, and we would hardly do less than adopt it. For it would smack of hypocrisy to require police officers to be reasonable if we cannot be reasonable too." (416 F.2d 776, 785.)

We, too, would subscribe to and endorse such a reasonable and well-recognized rule of law.

The citizen-informer rule of probable cause, as discussed in the above cases from other jurisdictions, expressly requires that the citizen's identity be disclosed. An exception has been recognized by at least one court to allow for anonymity in certain cases. As was stated in *State v. Chatmon* (1973), 9 Wash. App. 741, 748, 515 P.2d 530, 535:

"To establish the reliability of a citizen informant, and thus to fulfill the second prong of the *Aguilar* test, it is only necessary for the police to interview the informant and ascertain such background facts as would support a reasonable inference that he is 'prudent' or credible, and without motive to falsify. [Citation.] In making this determination, the police may justifiably assume that the ordinary citizen who has seldom or never reported a crime to the police may, in fact, be more reliable than one who supplies information on a regular basis. [Citation.]

In making this evaluation, an ascertainment of the citizen's identity will almost invariably be necessary. However, should the citizen wish to remain anonymous, as here, the reliability of his information could certainly be corroborated by description of him, his purpose for being at the locus of the crime, and the reason for his desire to remain anonymous."

The accompanying footnote explains the reason for such an exception:

"Where eyewitnesses to crime summon the police, and the exigencies are such (as in the case of violent crime and the

imminent possibility of escape) that ascertainment of the identity and background of the informants would be unreasonable, the 'reliability' requirement might be further relaxed. * * * *See also* People v. Hoffman, 45 Ill. 2d 221, 258 N.E.2d 326 (1970) * * *."

The court in *Chatmon* held, however, that information from the specific unidentified person in that case did not have sufficient indicia of reliability to satisfy the *Aguilar* rule.

In addition to the citizen-informer rule of probable cause, there is a rule which affords a valid investigatory stop upon information received from a person who may or may not be identified. In the leading case of *Adams v. Williams* (1972), 407 U.S. 143, 32 L. Ed. 2d 612, 92 S. Ct. 1921, it was noted that information insufficient for an arrest or search warrant may have sufficient indicia of reliability to justify a forcible investigatory stop. The rule was stated thusly:

"Informants' tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability. One simple rule will not cover every situation. Some tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized. But in some situations—for example, when the victim of a street crime seeks immediate police aid and gives a description of his assailant, or when a credible informant warns of a specific impending crime— the subtleties of the hearsay rule should not thwart an appropriate police response." (407 U.S. 143, 147, 32 L. Ed. 2d 612, 617-618, 92 S. Ct. 1921.)

This rule was well-followed in *State v. Lakomy* (1974), 126 N.J. Super. 430, 315 A.2d 46, where a factory's supervisor told responding police officers that a man in the factory had a gun. The resulting stop and frisk yielded an unlawfully possessed pistol. It was ruled that the responsible informer's personal involvement in the matter gave his information sufficient reliability to justify the police action, citing *Adams v. Williams.* We note that most Illinois cases decided under the citizen-informer rule involve very similar facts. In the usual case, a police officer is told by a person on the street that someone has a gun. The officer stops the suspect for investigation, and because a deadly weapon may be involved, the officer reasonably conducts a limited search for the weapon. Upon completion of the stop and frisk, an illegally possessed weapon is discovered, and the suspect is arrested for unlawful use of the weapon. In such a case, the appropriate rule would be that information received from a citizen-informer, identified or not, as related by a police officer, may be sufficient to justify an investigatory stop.

Illinois courts have also utilized the citizen-informer rule of probable

cause, which concerns information received from an identified witness or victim of a crime. See *People v. Evans* (1975), 32 Ill. App. 3d 865, 336 N.E.2d 792, *appeal denied*, 62 Ill. 2d 590; *People v. Frisco* (1972), 4 Ill. App. 3d 193, 280 N.E.2d 557, *appeal denied*, 52 Ill. 2d 595.

■■ To summarize, we believe that the weight of authority leads to the conclusion that there are variations in the interpretation of the citizen-informer rule. The first variation is that reliable information sufficient to prove the existence of probable cause to arrest may be contained in the testimony of a police officer who relates information received from a well-identified victim or eyewitness of a crime, in the absence of materially impeaching circumstances. The second variation is that information sufficient to justify an investigatory stop may be contained in the testimony of a police officer who relates information received from any person, identified or unidentified, if such information has sufficient indicia of reliability.

In the case at bar, the facts indicate that the information received from the unidentified male informer, standing alone, did not qualify as information sufficiently reliable under the citizen-informer rule to support a finding of probable cause to arrest Robert Martin. The informer was not identified, and there are circumstances tending to show that the purported eyewitness was a tipster, and not a completely disinterested citizen spontaneously coming forth to aid the police in the investigation of a crime. The information from the unidentified male informer may have been sufficient to have justified an investigatory stop and temporary questioning of Robert Martin, but not an arrest.

■■ The prosecution argues in the alternative that the unidentified male's identification was not the sole basis for the arrest; the unidentified female's description of Martin, as related by Officer Vinson, was an additional factor leading to a proper finding of probable cause. In *People v. Hammers* (1976), 35 Ill. App. 3d 498, 341 N.E.2d 471, *appeal denied* (1967), 63 Ill. 2d 553, the Fourth District Appellate Court considered the same type of problem, which was framed as follows:

"We are not advised, however, of any case that has passed on the question of whether corroboration of each of two unnamed informants by the other is a sufficient underlying circumstance to permit the judicial officer to whom the complaint is presented to conclude that the informants are credible." (35 Ill. App. 3d 498, 502, 341 N.E.2d 471, 474.)

The issue was determined in the affirmative—the two unnamed informers' stories could corroborate each other to show reliability sufficient to establish probable cause. In our case, the unidentified female's description of the attackers was not as specific as the male's. Yet, when considered with the male's positive identification of Martin as

related to Officer Vinson, it tends to show that the male's identification had an indicia of great reliability and that Robert Martin was one of the attackers on the evening of October 1, 1971. In this fashion, probable cause to arrest Robert Martin was shown. We hold that the trial court did not err in denying defendant's motion to quash his arrest.

■■ Defendant next contends that the trial court erred in denying his motion to suppress his written statements as being involuntarily given. The evidence on the issue was conflicting. Defendant testified that he gave his first statement only because the police beat him, stepped on his feet, and pushed his head under water. The police officers denied beating defendant, stepping on his feet, or pushing his head under water. The trial court credited the prosecution witnesses and made specific findings that Martin's statements were voluntarily given after he was duly warned of his constitutional rights. Having examined the record, we cannot say that such a determination was erroneous. The trial court did not err in denying defendant's motion to suppress his written statements. *People v. Fields* (1975), 31 Ill. App. 3d 458, 334 N.E.2d 752.

■■ Defendant's third contention is that the trial court erred in failing to give instructions on its own motion as to the lesser included offenses of voluntary and involuntary manslaughter, on the justifiable use of force in the defense of one's person, and on the State's burden of proof on the self-defense issue. At trial, however, defendant did not request such instructions or articulate these theories to the court. Following the analysis and decision in the very similar case of *People v. Worsham* (1975), 26 Ill. App. 3d 767, 326 N.E.2d 134, we hold that defendant waived this issue.

It is also argued that defendant was not accountable for the various crimes of his co-indictee, Nathson Fields, such as the murder of Watkins and the attempt murders of Merriweather and Wood. Defendant notes that he did not fire the shots in these crimes and that there is no evidence in the record that he acted in any preconceived concert of action with Fields. We shall consider each crime individually.

Martin was indicted for attempt murder of Charles Merriweather, and the indictment states that he "intentionally and knowingly attempted to kill Charles Merriweather by shooting at Charles Merriweather with a gun * * *." The only shooting at Merriweather took place when both Fields and Martin shot at Merriweather's car. However, defendant Martin admits this shooting in his confession.

■■ Martin's confession well describes the shooting of George Wood, which was the basis for the second attempt murder conviction. As Fields and Martin were running, Fields reloaded the gun and gave it to Martin to hold. When they saw Wood, thinking Wood was Merriweather, Fields asked Martin for the gun, Martin gave it to him, and Fields shot Wood. Any argument that defendant Martin's conduct in this regard did not

constitute attempt murder upon an accountability theory is frivolous because Martin clearly aided in the shooting.

■■ The remaining crime is that of the murder of Larry Watkins. Martin shot Watkins in the shoulder and Fields then told him to shoot Watkins again, in the head. When Robert Martin refused, Nathson Fields took the gun from Martin and shot Watkins in the head, killing him. Martin argues that he is not accountable for Fields' act of murder since there was no preconceived concert of action and his mere presence in the vicinity cannot be considered in determining accountability. The Criminal Code provides that a person is legally accountable for the conduct of another when:

> "(c) Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense. However, a person is not so accountable, unless the statute defining the offense provides otherwise, if:

> * * *

> (3) Before the commission of the offense, he terminates his effort to promote or facilitate such commission, and does one of the following: wholly deprives his prior efforts of effectiveness in such commission, or gives timely warning to the proper law enforcement authorities, or otherwise makes proper effort to prevent the commission of the offense." (Ill. Rev. Stat. 1973, ch. 38, par. 5—2(c).)

In cases such as *People v. Hubbard* (1973), 55 Ill. 2d 142, 302 N.E.2d 609, it has been stated that where persons have a common design to do an unlawful act, then whatever act any one of them does in furtherance of the common design is the act of all and all are guilty of whatever crime is committed. Martin's confession shows that both he and Fields had a common design to fire at a car containing other persons, to flee from the scene, and avoid capture. While fleeing, the car's occupants gave chase. Martin shot at one of his pursuers and wounded him. Although Martin did not pull the trigger to administer the fatal shot to Watkins, he is legally accountable under the common design rule. To not be accountable, he could have made a "proper effort to prevent the commission of the offense." Yet, Martin did nothing more than say that he would not kill, but allow his friend to take the pistol and fire the fatal shot. We hold that there was sufficient evidence to prove defendant guilty beyond a reasonable doubt of the various offenses. Defendant's arguments pertaining to his theory of self-defense were not considered because they were raised for the first time on appeal.

■■ Defendant argues that his conviction for the aggravated battery

of George Wood must be vacated since it arose from the same act which resulted in his conviction for the attempt murder of George Wood. The prosecution concedes the correctness of this argument, and we agree.

■■ Finally, defendant argues that his sentence of 35 to 50 years on the murder conviction was excessive and not conducive to rehabilitation. At the time of the offense, defendant was 18 years old and had no known prior adult or juvenile record. The evidence, however, shows that defendant was an active participant in a course of criminal conduct involving deadly weapons which left one person ruthlessly murdered, and a second person, an innocent bystander, wounded by gunshots. With due regard for our power to reduce a sentence in an appropriate instance, we defer to the trial court's evaluations herein and affirm defendant's sentence.

For the above mentioned reasons, defendant's convictions and sentences for the murder of Larry Watkins, and the attempt murders of Charles Merriweather and George Wood are affirmed. The conviction for the aggravated battery of George Wood is vacated.

McNAMARA and MEJDA, JJ., concur.