THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LLOYD A. WILLIAMS, III, Defendant-Appellant.

First District (4th Division)    No. 77-1090

Opinion filed June 29, 1978.—Rehearing denied July 28, 1978.

Ralph Ruebner and Kathy M. Morris, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Joan Cherry, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE ROMITI delivered the opinion of the court:

Defendant, Lloyd A. Williams, was found guilty of voluntary manslaughter (Ill. Rev. Stat. 1973, ch. 38, par. 9—2), after a bench trial in the circuit court of Cook County, and was sentenced to a term of 4 to 12 years. The issues presented for review are (1) whether the police had probable cause to arrest defendant and (2) whether defendant's inculpatory statement and fingerprints must be suppressed because they were the fruits of the allegedly unlawful arrest.

We reverse and remand for a new trial.

The testimony concerning defendant's motion to suppress evidence was heard in conjunction with defendant's trial.

Officer John Suchy testified that at about 11:45 p.m. or at midnight on May 9, 1973, he went to 9255 South La Salle and observed a cab which appeared to have been in an auto accident. Upon investigation, he discovered the driver had been shot six times. The driver's window was rolled down, the victim had dollar bills in his hands, and other bills were found in the cab. There were no eyewitnesses to the shooting, but one person told the officer he heard loud noises at about 11:45 p.m.

Robert Brown, the owner of the cab in which the victim was found, testified that based on his observation of the taxi meter, the cab had traveled about one-half mile with two fares.

It was stipulated that if Joseph Nemec, an evidence technician, were called, he would testify that between 12:30 and 1 a.m. on May 10, 1973, he lifted a fingerprint from the rear door of the cab. It was further stipulated that if Joseph Mortimer, a fingerprint expert, were called, he would testify he compared the fingerprint taken from the cab with one of the known fingerprints of defendant and found that there was a positive match of the left little finger.

Defendant testified that on May 11, 1973, he was arrested by Officer Duncan while walking toward his home and did not believe he was in violation of any law.

Officer Duncan testified he arrested defendant on May 11, 1973, at about 8 or 8:30 p.m., at about 93rd and Harvard. Duncan stated he had information from an "informant" that defendant and another man were involved in a shooting of a cab driver at 92nd and La Salle. Officer Duncan stated that neither he nor any other officer had used the party giving the information for any police work before, but he used the word "informant" in his police report because the person gave information relevant to the homicide he was investigating.

Duncan stated the informant told him he observed defendant and another man getting into a cab on the night of the incident at about 12 or 12:30 a.m. about four blocks from where the victim was found in the cab.

Duncan further testified defendant was brought to the police station at

8:30 or 9 p.m., and he was questioned for two to three of the eight hours he was in custody before giving a statement at 5 a.m. Defendant called his mother after he had been at the station 30 to 45 minutes, and she visited him and was present during conversations with defendant about the crime. Defendant was given *Miranda* warnings, but at no time did he request to have an attorney or did he request a person other than his mother to come to the station.

Joseph Fagan testified that at 5 a.m. on May 12, 1973, he then took a statement from defendant which was recorded by a court reporter. He testified he did not coerce defendant, and defendant had no difficulty understanding the proceedings.

Edward Stabrawa, a shorthand reporter employed by the State's Attorney's office, testified he was present when defendant made his statement. He saw no bruises or injuries on or about defendant's person, and at no time did he see anyone either physically or psychologically coerce defendant.

Defendant's statement indicated he was given *Miranda* warnings, but did not want an attorney and wanted to give a statement even though he was free not to continue. He then stated he and his friend flagged down a cab at 91st and Harvard and told the driver to go to 92nd and Eberhart. When he advised the driver to take a short cut, the driver pulled over and demanded payment before he would take them anywhere. Defendant got out of the car and put both arms on the driver's window. He told the driver he would be glad to pay, if he could make change for a $20 bill. The cab driver reached into his coat and pulled out a gun. Defendant stated his natural response was to try and grab it, and when he grabbed the driver's hand, the gun went off. At this time defendant panicked and fired the rest of the shells. Defendant explained he had taken some barbiturates about four hours earlier and was "high"; he said he had the money to pay the cab fare and did not want to do the shooting.

## I.

Defendant first contends there was no probable cause for his arrest. An arrest may be made without a warrant if the arresting officer has reasonable grounds to believe that the person is committing or has committed an offense. (Ill. Rev. Stat. 1973, ch. 38, par. 107—2(c).) Whether or not probable cause for an arrest exists depends on the totality of the facts and circumstances known to the officer at the time the arrest was made. (*People v. Clay* (1973), 55 Ill. 2d 501, 504, 304 N.E.2d 280.) The evidence required to establish probable cause is less than proof beyond a reasonable doubt and less than that required to obtain a conviction. (*People v. Hester* (1968), 39 Ill. 2d 489, 513-14, 237 N.E.2d 466, *cert. dismissed as improvidently granted* (1970), 397 U.S. 660, 25 L.

Ed. 2d 642, 90 S. Ct. 1408.) However, a court may not merely rely on the good faith of the arresting officer but must be presented with the objective facts that the officer acted upon. (*People v. Talley* (1975), 34 Ill. App. 3d 506, 508, 340 N.E.2d 167.) Once the defendant has shown that he was doing nothing illegal at the time of the arrest, the burden of the validity of the arrest shifts to the State. *People v. Evans* (1976), 42 Ill. App. 3d 902, 908, 356 N.E.2d 874; *People v. Martin* (1977), 46 Ill. App. 3d 943, 947, 361 N.E.2d 595.

Defendant first argues the facts communicated to the police officer by the informant were insufficient to establish probable cause. Second, he contends the reliability of the informant was not established; therefore, the information given by him cannot be the basis for probable cause, citing *People v. Martin* (1977), 46 Ill. App. 3d 943, 361 N.E.2d 595. In *Martin*, the court held that information received from an unidentified informer, standing alone, did not qualify as information sufficiently reliable under the citizen-informer rule to support a finding of probable cause to arrest. However, in that case there were circumstances tending to show that the purported eyewitness was a tipster rather than a completely disinterested citizen spontaneously coming forth to aid the police in the investigation of a crime. It was also found that probable cause for the arrest was present based on the corroboration of a second unidentified source.

■■■ There is no evidence in this case that the unidentified source was a tipster rather than a disinterested citizen. Officer Duncan's testimony was that the police had never used this party for information before. Therefore the reliability of this source was presumed and did not have to be independently established by the State. (*People v. Hester* (1968), 39 Ill. 2d 489, 237 N.E.2d 466, *cert. dismissed as improvidently granted* (1970), 397 U.S. 660, 25 L. Ed. 2d 642, 90 S. Ct. 1408; *People v. Isenberg* (1977), 52 Ill. App. 3d 426, 367 N.E.2d 364.) However, we agree with defendant that the information provided was insufficient to establish probable cause. The arresting officer knew only that at about the time the victim was found, within four blocks of that location, defendant was seen entering a taxi with another man. The officer did not testify that the same taxi or even the same taxi company was involved. No information was elicited as to the usual number of taxis in that area at such a time. These facts did not give the police reasonable grounds to believe defendant shot the victim.

But this finding of a lack of probable cause does not automatically require suppression of the confession. In *Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254, the court held that although the giving of *Miranda* warnings does not *per se* break the causal connection between the arrest and a subsequent statement, determining whether a confession is obtained by exploitation of an illegal arrest depends on the

temporal proximity of the arrest and the confession, the presence of intervening circumstances and, particularly, upon the purpose and flagrancy of the official misconduct.

In *People v. Fields* (1975), 31 Ill. App. 3d 458, 467-68, 334 N.E.2d 752, a case similar to the one at bar, defendant's inculpatory statement was made on the day after his arrest after he had been advised of his constitutional rights. The court stated that while there was no evidence of any intervening factors separating defendant's arrest and subsequent statement, there was no evidence to indicate defendant was arrested as a pretext for some collateral objective of the police. Moreover, the evidence did not reflect the arresting officers were acting upon such absence of probable cause as to render entirely unreasonable any belief on their part that probable cause existed.

In the case at bar, defendant was brought into the police station between 8:30 and 9 p.m. and was questioned a total of two to three hours by Officer Duncan before giving a statement which was recorded at 5 a.m. Defendant had been allowed to call his mother about 45 minutes after the arrest, and when she arrived at the police station, she took part in the discussions with defendant and the police officers prior to defendant's statement. Defendant was repeatedly advised of his *Miranda* rights, and he stated he was aware that he could have an attorney present and that he could refuse to make a statement if he chose to.

■■ Here, then, defendant was given *Miranda* warnings, he had the opportunity to talk with and have the counsel of his mother and, similar to *Fields*, there was no evidence to indicate he was arrested as a pretext for some collateral objective or that the arresting officer was acting upon such absence of probable cause as to render entirely unreasonable any belief on his part that probable cause existed.

*Brown v. Illinois*, relied on by defendant, is distinguishable because in that case the first statement taken from defendant was separated from his illegal arrest by less than two hours and the impropriety of the arrest had been conceded by the arresting officers, who testified the arrest was for the purpose of investigation or questioning.

## II.

■■ The State also contends that the fingerprints obtained at the time of the arrest and subsequently matched with a print found on the taxi were admissible under the "inevitable discovery" exception to the exclusionary rule set out in *Wong Sun v. United States* (1963), 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407. The exceptions to that rule were summarized in *United States ex rel. Owens v. Twomey* (7th Cir. 1974), 508 F.2d 858, wherein the court stated:

"* * *[T]here have evolved three tests from *Wong Sun*, any one

of which, when applicable, establishes that the controverted evidence is not fruit of the poisonous tree when: (1) the evidence was discovered by an independent source; (2) the evidence is sufficiently distant in causal connection from the illegal search and seizure so that the connection has become so attenuated as to dissipate the taint; or (3) the evidence inevitably would have been gained even without the unlawful search." (508 F.2d 858, 865.) The third exception has been cited (*People v. Holdman* (1977), 51 Ill. App. 3d 484, 366 N.E.2d 993, *appeal granted* (1977), 66 Ill. 2d 640; *People v. Hornal* (1975), 29 Ill. App. 3d 308, 330 N.E.2d 225), and applied by this court (*People v. Moore* (1977), 55 Ill. App. 3d 706, 371 N.E.2d 194; *People v. Horton* (1977), 49 Ill. App. 3d 531, 364 N.E.2d 551), although it has been criticized and rejected in some other jurisdictions (see the excellent summary in *United States v. Massey* (M.D. Fla. 1977), 437 F. Supp. 843, 853-54). In this case we need not reach the merits of the rule, for the State has failed to establish its applicability. The State relies on defendant's arrest sheet, which established that he was arrested several times prior to his arrest for this offense, and which was submitted to the trial court at the sentencing hearing as part of the presentence investigation report. Because of these prior arrests the State argues that defendant's fingerprints would have been on file with the police. Therefore the print found on the taxi would have inevitably led to the defendant through a check of police records, especially as the police were given the defendant's name by the unidentified source. But the States bases this argument on evidence never introduced at the trial nor on the motion to suppress, which was heard with the trial. It was only submitted after defendant was found guilty. It is true that evidence adduced *at trial* may be considered by a reviewing court in determining whether a denial of a motion to suppress was error. (*Carroll v. United States* (1925), 267 U.S. 132, 69 L. Ed. 543, 45 S. Ct. 280; *People v. LaBostrie* (1958), 14 Ill. 2d 617, 153 N.E.2d 570, *cert. denied* (1959), 359 U.S. 947, 3 L. Ed. 2d 680, 79 S. Ct. 728; *People v. Braden* (1966), 34 Ill. 2d 516, 216 N.E.2d 808; *People v. Billings* (1977), 52 Ill. App. 3d 414, 367 N.E.2d 337.) But this rule is based on the realization that in such a case the trial court was presented with evidence at trial which supported the admission, at trial, of the evidence sought to be suppressed. Accordingly, such an admission could not be held to have been prejudicial error. This principle cannot logically be extended to allow consideration of evidence only presented after a determination of guilt as support for the admission during trial of evidence on the question of defendant's guilt. Indeed even as to evidence presented during trial, which on appeal was used as justification for an otherwise erroneous failure to suppress evidence, this court has held that such evidence could only be considered if it was introduced prior to the

introduction of the evidence sought to be suppressed. *People v. Meacham* (1977), 53 Ill. App. 3d 762, 368 N.E.2d 400; *People v. Griswold* (1977), 54 Ill. App. 3d 246, 369 N.E.2d 392.

But a more basic flaw in the State's argument is that they never presented the trial court with proof that as a result of the prior arrests of the defendant they did in fact have his fingerprints on file. Although we recognize that as part of the booking process an arrestee's fingerprints are usually recorded, this general procedure cannot substitute for actual proof that this was done in this case. Specifically, the State failed to establish that they had on file a print from defendant's left little finger which would have matched that found on the taxi. They therefore failed to meet their burden of showing that the evidence would inevitably have been discovered without the illegal arrest of the defendant. *People v. Taylor* (1975), 31 Ill. App. 3d 576, 333 N.E.2d 41.

The fingerprints of the defendant should have been suppressed as the fruit of an illegal arrest. They provided crucial physical corroboration of defendant's incriminating statement. Therefore defendant's conviction is reversed and the cause remanded for a new trial.

Reversed and remanded.

JOHNSON, P. J., and DIERINGER, J., concur.