THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DONALD FRISCO, Defendant-Appellant.

(No. 54822; ▮▮▮▮▮)

First District—February 24, 1972.

Gerald W. Getty, Public Defender, of Chicago, (Shelvin Singer and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Terry M. Gordon, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Defendant was indicted for aggravated battery and unlawful use of a weapon. A jury found him not guilty of aggravated battery, but guilty of unlawful use of a weapon. The court sentenced him to two to ten years. On appeal defendant contends that the court erred in denying his motion to suppress the evidence, and that he was not proved guilty beyond a reasonable doubt.

At the hearing on the motion to suppress, defendant and two police officers testified. Defendant testified that, as he and others were standing at Rush and Huron Street in Chicago after midnight, two police officers drove by in a squad car and shouted a racial slur at the group. The officers said that if the men were still there when they returned, the officers would kill them. When the officers returned twenty-five minutes later, one shouted, and the other officer fired a shot in the air. Defendant further testified that he ran and was captured about ten minutes later, four or five blocks away. He was taken to the police station where he was shown a revolver and was told that it had been taken from his person. He denied that he had a gun at the time of the arrest.

Two members of the Chicago Police Department, Officer Gene Shurtleff and Ralph Kleiner, testified at the hearing on the motion. While in uniform and in a squad car, they were approached by a citizen who informed them that a woman down the street had just been robbed. The citizen, who identified himself as Bear, said that he had observed the assailant fleeing and had been told by the victim, Lisa Golden, that she had been robbed. The officers drove through the neighborhood with Bear in the squad car looking for a man who fit the description given by Bear. As they approached a group of men standing at the corner of Rush and Huron Streets, Bear pointed out the defendant. The officers further testified that, as they left the squad car, defendant started to run. The officers gave chase; Shurtleff was never more than 20 feet behind defendant, and once Shurtleff fired a shot in the air. When defendant reached State Street, he encountered two other officers who were answering Shurtleff's radio call. Defendant reversed directions, and knocked Shurtleff to the ground. Kleiner captured him after a struggle. Defendant was searched and a revolver found on his person.

At the hearing, Shurtleff testified on direct examination that Bear de-

scribed the assailant as being 5'7" to 5'8" in height; he could not recall the weight description. On cross-examination, he stated that Bear described the robber as being between 5'5" and 5'7" in height. Shurtleff said that the case report was filled out by other officers, not by him. He signed the report as being true, but it was inaccurate in stating that the robbery was reported by Lisa Golden, since Bear had reported it. After hearing the three witnesses, the court denied defendant's motion to suppress the evidence.

Defendant first argues that the conviction must be reversed because the trial court erroneously denied his motion to suppress the evidence. He maintains that the search which produced the weapon was not incident to a legal arrest, contending that there was no evidence of any reliability of the informer or of his information.

■■■ In the instant case, however, the person who gave the police the information was a private citizen who apparently had no motive of personal gain in informing the police that a crime had been committed. The requirement of prior reliability which must be met when police act upon "tips" from professional informers does not apply to information supplied by ordinary citizens. (*Draper v. U.S.*, 358 U.S. 307.) See also *People v. Hester*, 39 Ill.2d 489, 237 N.E.2d 466, where the court said that the police had a right to rely upon partly hearsay information which they received from school employees, and also held that the doctrine of prior reliability did not apply to information received from ordinary citizens. In the case of *In Re Boykin*, 39 Ill.2d 617, 237 N.E.2d 460, an assistant school principal informed the police that she had received anonymous information that defendant had a gun in his possession. Defendant was arrested, searched, and a gun was found. In affirming the conviction, the court stated at p. 619:

"[The officers] knew only what they had been told, and were not required to delay until they had ascertained whether the informant was in fact anonymous or whether the assistant principal said that he was in order to avoid future difficulties in the school and creation of a feud. [Citation omitted] In this case, moreover, there is a complete absence of any possible element of gain to the anonymous informant from furnishing false information, and the nature of the potential danger differs from that involved in gambling and narcotics cases."

Based upon the citizen's complaint, the police officers had reasonable grounds to believe that defendant had committed the crime, and were justified in making the arrest and the subsequent search. The officers were approached by a citizen who informed them a robbery had just been committed and that he could identify the offender. The citizen said that he observed the robber flee the victim's apartment, and that

the victim had informed him of the robbery. Moreover, the citizen offered to assist the officers in their search, and this gave further credence to his report, further justifying the officers' reasonable reliance on his information. The court did not err in denying defendant's motion to suppress the evidence.

Defendant also argues that he was not proved guilty beyond a reasonable doubt. At trial, Shurtleff testified that he received injuries to his knuckles and forearms during the arrest. He believed that his knuckles were injured in his fall to the ground when defendant rushed him. He was treated at the hospital, and was off work ten days. Shurtleff also testified on direct examination that he mentioned Bear's name in his appearances before the Grand Jury, while on cross-examination he stated that he had not mentioned Bear's name before the Grand Jury.

At trial Kleiner testified that he did not recall seeing bruises or blood on defendant at the time of the arrest, but thought defendant was injured. Kleiner talked to Lisa Golden after the reports had been completed. Kleiner believed that Bear had brought Lisa Golden to the police station while Shurtleff and he were at the hospital for treatment of Shurtleff's injuries.

Officers Michael Capesius and John Thompson, the other officers involved in the arrest, also testified at trial. The officers, in civilian clothes, responded to a radio call and went to the scene where they observed defendant running toward them with Shurtleff in pursuit. Shurtleff was about 30 to 40 feet behind defendant. When Capesius identified himself as a police officer and Thompson fired a warning shot in the air, defendant reversed directions and ran into Shurtleff, knocking him to the ground. The officers were present when Lisa Golden, accompanied by a man known only as Bear, came into the station to give information. At the time, Shurtleff and Kleiner were at the hospital. The information in the report, prepared by Capesius and signed by Shurtleff, came primarily from Lisa Golden. Capesius testified that when they first saw defendant he was climbing a fence; Thompson said that he was running across a parking lot.

Julius Mesko, chief investigator for the Public Defender, was the only witness called on behalf of defendant at trial. He attempted to serve subpoenas on Lisa Golden and Bear at their last known address. He was informed that Lisa Golden had lived there, but had moved on the day previous to his attempt to serve her. Mesko could find no one at the address who had heard of Bear.

■■■ Defendant argues that, because of the inconsistencies, contraditcions and discrepancies in the testimony of the four police officers, he was not proved guilty beyond a reasonable doubt. However, we find

that the inconsistencies and discrepancies claimed by defendant were either explained to the triers of fact or were of such little significance as not to create a reasonable doubt of defendant's guilt. Such matters as how Officer Shurtleff injured his knuckles, the length of the chase, the directions which defendant ran, and the fact that only one officer mentioned defendant's climbing a fence during the chase, were all questions properly determined by the jury. Defendant stresses the variance between the case report and Shurtleff's and Kleiner's testimony with regard to who reported the crime. This variance was explained by the officers who testified that Capesius prepared the report from information received by Lisa Golden while Shurtleff was at the hospital. This testimony by Capesius and Thompson also refutes defendant's suggestion that Lisa Golden and Bear were figments of Shurtleff's imagination. Indeed, the only evidence offered by defendant, at trial, that of the investigator, also proved Lisa Golden's existence. The only contradiction in Shurtleff's testimony was his statement that he had informed the Grand Jury about Bear, and his later testimony that he did not mention Bear's name before the Grand Jury. This contradiction was heard by the triers of fact, and weighed by them. It was insufficient of itself to create a doubt of defendant's guilt. Upon review, this court will not substitute its judgment of facts for that of the jury, and will reverse only when the evidence is so improbable as to raise a reasonable doubt of guilt. (*People v. Novotny*, 41 Ill.2d 401, 244 N.E.2d 182.) We find that, considering the circumstances of a midnight chase, the testimony of the four police officers was consistent and credible. It was also sufficient to prove defendant guilty beyond a reasonable doubt.

Accordingly, the judgment of the circuit court is affirmed.

Judgment affirmed.

McGLOON, P. J., and DEMPSEY, J., concur.