THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* GUADALUPE CARTON *et al.*, Defendants-Appellees.

Third District   Nos. 80-267, 80-266 cons.

Opinion filed April 30, 1981.

STOUDER, J., dissenting.

Edward Keefe, State's Attorney, of Rock Island (John X. Breslin, of State's Attorneys Appellate Service Commission, of counsel), for the People.

William G. Schick, of Rock Island, for appellees.

Mr. PRESIDING JUSTICE SCOTT delivered the opinion of the court:

Defendant Guadalupe Carton was charged with the offense of unlawful possession of a controlled substance, cocaine. Defendant Anthony Carton was charged in a three-count information with unlawful possession of cocaine, LSD and cannabis. Prior to trial, the defendants successfully moved to quash a search warrant and suppress the evidence seized under the warrant, which they claimed was improperly issued. The People have appealed.

The affidavit in support of the complaint for search warrant stated as follows:

"1. That your affiant is a law enforcement officer with the City of East Moline, East Moline Police Department.

2. That your affiant has received information from a John Doe, an ordinary and reliable citizen, that he was present at a residence occupied by a T. Carton, located at 716—22nd Street A, Moline, Illinois, on the morning of November 29, 1979.

3. That your affiant has received information from the said John Doe that he was present at said residence with the permission of T. Carton.

4. That your affiant has received information from John Doe that while present at the residence located at 716—22nd Street A, Moline, Illinois, he observed two jars containing a white powdery substance and a green leafy substance believed to be marijuana on a table in the living room of said residence.

5. That your affiant has received information from John Doe that after observing the white powdery substance, he took a sample immediately to the East Moline Police Department, East Moline, Illinois.

6. That your affiant received a white powdery substance from the same John Doe at the East Moline Police Department on the morning of November 29, 1979.

7. That your affiant, immediately after having received the white powdery substance from the same John Doe, performed a field test on said substance for the purpose of determining the presence of a controlled substance.

8. That your affiant further states that the results of said field test revealed the presence of amphetamine."

Defendants' motion to quash the search warrant and suppress evidence contended that the complaint, affidavit and search warrant were invalid due to a lack of probable cause, *i.e.*, that when the police officer, affiant, appeared at the home of the issuing judge, "John Doe" did not appear also, that the informant was not named and that no facts existed in

the affidavit or complaint for search warrant which sufficiently tested the reliability or credibility of the informant and that the information submitted was insufficient as a matter of law to support the issuance of the search warrant.

The Circuit Court of Rock Island County granted the defendants' motion to suppress and held that while the identity of the informant is not required to be disclosed, then the affidavit must state why the informant is reliable. That without the informant's name or information concerning his reliability being contained in the affidavit, the issuing judge is given little opportunity to make an independent determination as to the informant's reliability. Alternatively, the court believed that the informant could have been personally present before the judge to allow him to make an independent determination of credibility, but this was not done. No authorities were cited by the court in support of its decision.

A fair reading of the record, however, indicates that at the suppression hearing the attorneys for the People and the defendants agreed that the motion to suppress raised solely questions of law for the court to decide. There was no dispute as to the accuracy of the facts alleged in the affidavit and no testimony was elicited by either side at the hearing. Further, defense counsel acknowledged that they knew from the police reports who the informant was, *i.e.*, that "John Doe" was the "Orkin Man."

Defense counsel contended that the rules laid down by the United States Supreme Court in *Aguilar v. Texas* (1971), 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509, and *Spinelli v. United States* (1969), 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584, and followed by the Illinois Supreme Court and appellate courts, had been violated when the police failed to take the "Orkin man" before the issuing judge and establish his credibility, or, alternatively, that the affidavit failed to recite sufficient facts to show the informant's credibility, *i.e.*, the lack of a basis to show that when the informant saw a "green leafy substance believed to be marijuana" in defendant's residence, there was a total lack for such a conclusion. That there was no showing or corroboration, at least with respect to the marijuana, that the informant had the ability or experience necessary to identify marijuana, that the mere viewing of a "green leafy substance" without more does not create sufficient probable cause to believe the substance was marijuana so as to support the invasion of privacy of another's home. *People v. Palanza* (1978), 55 Ill. App. 3d 1028, 371 N.E.2d 687; *People v. Tatman* (1980), 85 Ill. App. 3d 274, 406 N.E.2d 619.

■■ With respect to the charge of unlawful possession of cannabis by defendant Anthony Carton, we agree and affirm the Circuit Court of Rock Island County in quashing the search warrant and suppressing the marijuana evidence.

The suppression of evidence with regard to the unlawful possession of controlled substances presents a different situation for review because there was corroboration of the information given by the informant through chemical analysis of the white powdery substance seized by the informant and delivered to the police.

Since both the People and the defendants initially cite the *Aguilar* decision of the United States Supreme Court to support their respective positions, we believe an analysis of that decision and its progeny would serve as an appropriate starting point to examine the doctrine of probable cause within the constitutional mandate of the fourth amendment. We note further that we are not alone in the belief that *Aguilar* is the landmark decision in which to commence such an inquiry. W. LaFave, Search and Seizure §3.3, at 500 (1978).

The majority in *Aguilar* concluded that an affidavit did not meet the requirements of the fourth amendment, reasoning:

"Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, * * * the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, * * * was 'credible' or his information 'reliable.' Otherwise, 'the inferences from the facts which lead to the complaint' will be drawn not 'by a neutral and detached magistrate,' as the Constitution requires, but instead, by a police officer 'engaged in the often competitive enterprise of ferreting out crime,' * * * or, as in this case, by an unidentified informant." 378 U.S. 108, 114-15, 12 L. Ed. 2d 723, 728-29, 84 S. Ct. 1509, 1514.

Professor LaFave has observed that:

"This last quoted paragraph contains what is customarily referred to as '*Aguilar's* two-pronged test.' * * * Under what is usually designated as the first prong of *Aguilar*, or what might more precisely be called the 'basis of knowledge' prong, facts must be revealed which permit the judicial officer making the probable cause determination to reach a judgment as to whether the informant had a basis for his allegations that a certain person had been, was or would be involved in criminal conduct or that evidence of crime would be found at a certain place. By contrast, under the second prong of *Aguilar*, properly characterized the 'veracity' prong, facts must be brought before the judicial officer so that he may determine *either* the inherent credibility of the informant *or* the reliability of his information on this particular

occasion. That is, the second or 'veracity' prong of *Aguilar* may be said to have a 'credibility spur' and a 'reliability spur.' " W. LaFave, Search and Seizure §3.3 at 501-02 (1978).

We must further consider whether there is a distinction between information which comes from a private citizen instead of a police informant and how "credible" must the informant be and how "reliable" must the information be before the issuing judge may grant the police officer's request for a search warrant. We find that unlike the informants in *Aguilar, Spinelli* and *Harris*, and the informant in *People v. Parker* (1968), 42 Ill. 2d 42, 245 N.E.2d 487, the informant here was a private citizen. Such a fact is significant because the Illinois Supreme Court has held that the usual requirement of prior reliability which must be met when police act upon "tips" from professional informers does not apply to information supplied by ordinary citizens. *People v. Hester* (1968), 39 Ill. 2d 489, 237 N.E.2d 466; *People v. Hammers* (1976), 35 Ill. App. 3d 498, 341 N.E.2d 471; *People v. Blackman* (1978), 62 Ill. App. 3d 726, 728-29, 379 N.E.2d 344, 346, holding:

"Under *Aguilar* and its progeny, hearsay information from an informant may be considered as the basis for a search if the investigating officer is aware of some facts indicating that the informant is reliable and some facts indicating that the informant ascertained his information in a reliable manner. In the present case both prongs of the *Aguilar* test were satisfied. First, evidence of the informant's reliability is not required in cases such as this where the informant is a private citizen rather than a paid police informer. (*People v. Billings* (1st Dist. 1977), 52 Ill. App. 3d 414, 367 N.E.2d 337; *People v. Hoffman* (1970), 45 Ill. 2d 221, 258 N.E.2d 326.) Lack of personal gain to the private citizen is indicative of his reliability. (*People v. Frisco* (1st Dist. 1972), 4 Ill. App. 3d 193, 280 N.E.2d 557.) The second prong of *Aguilar*, requiring facts indicating the informant gained his information in a reliable manner, is also satisfied here because in this case informant John Phillips gained his information by personally observing the defendants picking what he believed to be marijuana. Personal observation by the informant is surely the most reliable means of all for obtaining credible information."

In *People v. Palanza* (1978), 55 Ill. App. 3d 1028, 371 N.E.2d 687, this court was confronted with similar issues, and although factually distinguishable, much of what we observed there is applicable here.

In *Palanza*, the defendants had been charged with unlawful possession of cocaine and prior to trial successfully moved to suppress evidence seized under a search warrant which they claimed had been improperly issued.

The only issue presented in the People's appeal was whether the police officer's complaint requesting the issuance of the search warrant was sufficient to establish probable cause for the issuance of the search warrant. The relevant portion of the supporting affidavit of the police officer was set forth and the complaint included facts relating to the informant's credibility and reliability, especially mentioning the informant's communication of reliable information to the officer about a robbery. However, so far as the appeal was concerned, no question was raised concerning the sufficiency of the allegations regarding the reliability or credibility of the informer.

We held in *Palanza* that:

"It is well settled that the complaint or affidavit of a police officer made for the purpose of securing the issuance of a search warrant need not be made on personal knowledge only. (*Jones v. United States*, 362 U.S. 257, 4 L. Ed. 2d 697, 80 S. Ct. 725.) Where the affidavit or complaint is not based on personal knowledge, the parties agree that *Aguilar v. Texas*, 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509, established the twofold test governing the consideration of the complaint or affidavit by the judicial officer. *Aguilar* requires that the complaint or affidavit set forth facts upon which the police officer bases his conclusion that the third party is a reliable and credible source of information and also facts showing the basis of the third party's knowledge.

On this appeal we are concerned with that part of the *Aguilar* test referred to as the 'basis of knowledge test' or the 'how' or 'why' the third-party informant knew of the information he was conveying. This requires disclosure of the underlying facts supporting the conclusions of the informant. This of course means as applied to the facts of this case, underlying facts from which the informant could conclude that the substance about which he was reporting was cocaine.

\* \* \*

This case deals with only one method by which the affiant seeks to establish the basis of knowledge of his informant. There are several others. The informant may be shown to know the substance was a narcotic substance by:

'\* \* \* *an acquisition of a part of the substance by the informant for testing and identification by the police officer,* \* \* \*.' (LaFave, *Probable Cause from Informants: The Effects of Murphy's Law on Fourth Amendment Adjudication*, 1977 U.Ill.L.F. 1, 39-40.)" (Emphasis added.) 55 Ill. App. 3d 1028, 1029-31, 371 N.E.2d 687, 688-89.

In the case at bar, we believe that both prongs of the *Aguilar* test have been met.

Under what is usually designated as the first prong of *Aguilar*, or what has been referred to as the "basis of knowledge" prong, facts must be revealed to the judicial officer making the probable cause determination to reach a judgment as to whether the informant had a basis for his allegations that evidence of a crime would be found at a certain place. Generally, it may be said that the surest way to satisfy the "basis of knowledge" prong of *Aguilar* is by showing that the informant is passing on what is to him first-hand information.

Applying the "basis of knowledge" test of *Aguilar* to the facts set out in the affidavit in the case at bar, we find that (1) the informant was personally present in *the defendants'* residence (affidavit referred to residence of one "T. Carton" but motion to quash search warrant and suppress evidence admitted residence in question was that of defendant); (2) that the informant was there with the permission of one "T. Carton"; (3) that the informant was present in the defendants' residence on the morning of November 29, 1979; (4) that while present the informant personally observed two jars containing a white powdery substance at a specific place within said residence; (5) that the informant personally removed a sample of the white powdery substance; and (6) delivered it immediately to the police.

The "basis of knowledge" test was, therefore, personal observation, not rumor, reputation, revenge, etc., but actual on-sight observation. However, standing alone, these facts would fail to show probable cause because there was no showing that the informant had any experience in recognizing or identifying "white powdery substances" as narcotics, that he was familiar with controlled substances or that the defendants had made any statements regarding their identity. That is why the "green leafy substance believed to be marijuana" fails for lack of a basis of knowledge. (*People v. Tatman* (1980), 85 Ill. App. 3d 274, 406 N.E.2d 619.) Without more, this case differs little from *Palanza* or *Tatman* and would necessitate the same result. But there is more.

The second prong of *Aguilar*, what has been called the "veracity" prong, has also been met. Under this prong, facts must be brought before the judicial officer so that he may determine *either* the inherent credibility of the informant *or* the reliability of his information on this particular occasion. As Professor LaFave would put it, the "credibility spur" and the "reliability spur." W. LaFave, Search and Seizure §3.3, at 502 (1978).

■■ With respect to this second "veracity" prong of *Aguilar*, it is most common for the police to attempt to establish the credibility of the informant on the basis of his past performance (*i.e., McCray v. Illinois*

(1967), 386 U.S. 300, 18 L. Ed. 2d 62, 87 S. Ct. 1056). However, the affidavit here indicates that the informant was a private citizen, not an undercover "stool pidgeon" "from the criminal milieu." (*Erickson v. State* (Alas. 1973), 507 P.2d 508.) Private citizens, as opposed to paid police informants, are unlikely to have a "track record" so none is required. (*People v. Hester* (1968), 39 Ill. 2d 489, 237 N.E.2d 446; *People v. Hammers* (1976), 35 Ill. App. 3d 498, 341 N.E.2d 471; *People v. Blackman* (1978), 62 Ill. App. 3d 726, 379 N.E.2d 344.) To adopt such a rule would "encourage the government to prefer as informants participants in criminal enterprises rather than ordinary citizens, a goal the government specifically eschews ° ° ° upon the explicit premise that such persons are often less reliable than those who obey the law." *United States v. Harris* (1971), 403 U.S. 573, 595, 29 L. Ed. 2d 723, 740-41, 91 S. Ct. 2075, 2087-88.

Defendants claim, however, that the affidavit's allegations of private citizen status is only a conclusion and that insufficient facts are present to show that the "Orkin man" was in fact a private citizen and not a paid police informant recruited by and "acting under the control and direction of the police, with the established sole purpose of providing information to them." *People v. Tatman* (1980), 85 Ill. App. 3d 274, 279, 406 N.E.2d 619, 623.

■■ The defendants' point that merely referring to the source of the information as a private citizen is insufficient to meet the "credibility spur" of *Aguilar* is well taken. Facts must be stated which show that the informant is indeed from the private sector (of course the more facts disclosed about the background of the informant result in the erosion of anonymity which is often the precondition for furnishing the information in the first place), but nevertheless "[t]he State cannot, merely, by stating that their informant is a citizen informant, establish that fact. Supporting facts must be presented which support the conclusion that the informant is a private citizen informant." (*Tatman*, 85 Ill. App. 3d 274, 279, 406 N.E.2d 619, 623.) There are, however, sufficient facts remaining under the "reliability spur" to support the issuance of the search warrant. Recall that *Aguilar* and its progeny require a showing of *either* the inherent credibility of the informant *or* the reliability of his information on the particular occasion in question. (W. LaFave, Search and Seizure §3.3, at 502 (1978).) Here the facts disclosed in the affidavit indicate that (1) the police received the sample of the white powdery substance from the informant on the morning of the same day the informant said he saw and removed the substance from the defendants' apartment and turned the sample over to police; (2) that the police immediately corroborated the presence of a controlled substance by chemical testing of the sample. This last fact was specifically mentioned as missing in our opinion in *People v. Palanza* (1978), 55 Ill. App. 3d 1028, 1030, 371 N.E.2d 687, 689.

For the foregoing reasons, the judgment of the Circuit Court of Rock Island County is affirmed with respect to the suppression of cannabis which may not be introduced into evidence against the defendant, Anthony Carton. The judgment of the Circuit Court of Rock Island County is reversed to the extent that it quashed the search warrant and suppressed the evidence with regard to the unlawful possession of cocaine and LSD by the defendants, Guadalupe Carton and Anthony Carton.

Affirmed in part; reversed in part.

ALLOY, J., concurs.

Mr. JUSTICE STOUDER, dissenting:
I must respectfully dissent from the majority opinion.

My initial point of disagreement is the distinction the majority draws between the admissibility of the cocaine and the inadmissibility of the marijuana as evidence. The search warrant permitted the police to search defendant's residence for both marijuana and cocaine. The majority holds that the portion of the search warrant pertaining to the marijuana was invalid, and I agree with that holding. Therefore, the validity of the search warrant with respect to the cocaine must be determined by deleting those sections regarding the marijuana and looking solely at the remaining parts. The majority, in applying this test, holds that the search warrant for the cocaine was valid. The majority therefore concludes that the cocaine was admissible but that the marijuana was inadmissible because those sections of the search warrant were invalid. However, I believe that either the marijuana and cocaine must both be admissible or neither must be admissible. If the search warrant for the cocaine was valid, then the marijuana clearly was contraband discovered pursuant to a valid search warrant and is admissible as such. If the search warrant for the cocaine was invalid then the marijuana and cocaine are obviously inadmissible. The key issue, therefore, is whether or not the search warrant for the cocaine was valid. The majority holds the warrant was valid. I would hold it was invalid.

The majority properly cites *Aguilar v. Texas* (1971), 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509, as determinative of the issue in this case. *Aguilar* established rules regarding what information must be contained by an affidavit for a search warrant based on that affidavit to properly issue. *Aguilar* contains a two-pronged test for determining the sufficiency of the affidavit. The first prong, the basis of knowledge prong, requires that facts must be revealed showing whether the informant had a basis for his allegations that a certain person had been, was, or would be involved

in criminal conduct or that evidence of crime would be found at a certain place. Under the second prong, the veracity prong, facts must be revealed to show either the inherent credibility of the informant or the reliability of his information on this particular occasion. Looking at the facts pleaded in the affidavit, the judge must make a determination as to whether or not probable cause exists to issue a search warrant.

*Aguilar* dealt with a paid informant. Because the informant was paid for his information, he had an incentive to give false information. Therefore, facts had to be presented to confirm the reliability of the information he gave.

In contrast to paid informants, ordinary citizens are presumed to have no incentive to give false information. Therefore, when an ordinary citizen gives information to an officer which is used in the affidavit and the affidavit contains facts establishing the informant is not a paid informant but an ordinary citizen, then the informant is presumed to be credible. If the judge finds an adequate basis for the informant's knowledge, then a search warrant will properly issue.

The problem in the instant case is that, although the affidavit states that the informant is an ordinary citizen, no facts are pleaded to show that he is in fact an ordinary citizen and not a paid informant. This lack of proof means that the informant's credibility has not been established, and the majority concedes this.

However, the majority would circumvent this problem by saying that the test which showed the powdery substance was cocaine corroborated the facts given by the informant and that this demonstrates his reliability. Since the second prong of the *Aguilar* test can be satisfied by either proving the informant's credibility or by proving that the information given is reliable, the majority holds that the *Aguilar* test was satisfied and the search warrant was properly issued.

The problem with the majority's reasoning is that the fact that the test showed the powdery substance was cocaine in no way proved the reliability of the informant's statements. The fact that the test showed the substance was cocaine goes to the first prong of the *Aguilar* test, basis of knowledge. The majority concedes that if the test had not been given, then there would have been no basis for believing the powder was cocaine, and the search warrant could not have been issued. If the test was necessary as a means of proving probable cause that the powder was cocaine, then clearly the test refers to the basis of knowledge prong of *Aguilar*. There is no logical connection between the fact that the test showed the powder was cocaine and the reliability of the informant's statement that it was taken from the defendant's apartment. Nor are any other facts pleaded in the affidavit which show the reliability of the informant's information.

Since neither the informant's credibility nor the reliability of his information can be proven by the facts contained in the affidavit, the *Aguilar* test was not satisfied and the search warrant should not have been issued. Therefore, I would affirm the trial court's suppression of the cocaine and marijuana found during the search pursuant to the search warrant.