THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* NANCY TOWNSEND *et al.*, Defendants-Appellants.

Third District    Nos. 79-986, 79-985 cons.

Opinion filed December 10, 1980.

Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, for appellants.

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The defendants, Nancy Townsend and Robert Walker, were jointly charged by a three-count information. Subsequently, two of the counts were *nolle prossed* with one count of unlawful possession of a controlled substance remaining. Following a jury trial both defendants were found guilty and sentenced to 30 months of probation. Additionally, defendant Walker was fined $9,000 as a condition of probation. On appeal they raise the following issues: (1) whether the evidence produced proved them guilty of possession of narcotics beyond a reasonable doubt; (2) whether

the search warrant, which was based upon an informant's hearsay declarations, properly established probable cause; and (3) whether Walker's fine conformed to the Unified Code of Corrections. Ill. Rev. Stat. 1979, ch. 38, par. 1005—1—1 *et seq.*

On the morning of July 22, 1978, Park Forest South police obtained a warrant to search the dwelling located at 830 Greenbriar Lane, Park Forest South, Illinois. The complaint for the warrant and its supporting affidavit were based on information related to police by the defendant Townsend's daughter and the defendant Walker's step-daughter, Cheryl Hogan. Hogan did not accompany the complaining police officer when the warrant was secured. The police executed the warrant late that same day and seized a gallon jug of a liquid substance, later identified as hydrocodone, from the basement of the dwelling. The defendants acted surprised upon its discovery and denied any knowledge of the substance. They were then arrested and taken into custody, whereupon Walker stated that he lived at 830 Greenbriar Lane, the dwelling searched. On August 9, 1978, an information charged them with the unlawful possession of hydrocodone, in violation of section 402(b) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1977, ch. 56½, par. 1402(b)).

Immediately prior to trial, on August 22, 1979, a hearing was held on the defendants' motion to quash the search warrant and suppress the contraband seized. They argued that because (1) the warrant was based solely upon the hearsay statements of Hogan and (2) the complaining officer's affidavit failed to reveal any basis for the trial court to determine Hogan's veracity, the search warrant violated *Aguilar v. Texas* (1964), 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509, and *Spinelli v. United States* (1969), 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584, and therefore the warrant was not supported by probable cause.

The complainant's affidavit stated that on July 17, 1978, Hogan informed police officer Richard Perkins that the defendants possessed large quantities of illegal drugs for their unauthorized personal use and for sale to others. She stated that she personally saw the drugs and she also delivered to Perkins some pills that allegedly came from the defendants' residence. Among the contraband in the house was a one-gallon jug containing "liquid morphine" which was located in the basement. She told Perkins that she discovered the jug while "snooping around" the basement sometime earlier. She copied down the label on the jug and gave it to Perkins on July 17. The record is unclear whether Perkins met once or twice with Hogan on that date. She also related to Perkins a conversation between Hogan and Walker on or about July 7, 1978. Walker reportedly told her that another person left the jug in their house and that the defendants were planning to dispose of it soon. Immediately after this discussion Hogan overheard the defendants plan the "disposal" of the

contents by placing the drug into smaller bottles for eventual sale. She returned to the police station four days later on July 21, 1978, and again informed Perkins that numerous illegal drugs were located in the house. She further stated that Townsend was the lessee of 830 Greenbriar Lane and that Walker lived with her for the past year. Perkins' affidavit did not identify Hogan as a citizen informant, but it did state her relationship to the defendants and that she lived at that residence with them for approximately one year. The defendants' motion to suppress was denied and the case proceeded to trial.

At trial the defendants claimed that sometime between July 3 and July 9, 1978, Richard Thurston placed the jug containing the hydrocodone in the basement while the defendants were on vacation. Thurston was originally a house guest of the defendants but was ordered to leave on June 30, 1978, after they found Thurston and Hogan, then 17 years old, intoxicated. Allegedly, Thurston then threatened the lives of Townsend's two younger children.

On July 9, 1978, while in Wisconsin on vacation, Hogan revealed to Walker that she gave Thurston a key to the dwelling. Walker returned the next day to 830 Greenbriar Lane and discovered evidence that someone stayed there since they left on July 3, but he was unable to discover whether that person was Thurston. The defendants alleged that Hogan and Thurston were romantically involved and that after the defendants ordered him to leave, Hogan was furious with them. They further alleged that in revenge she concocted a "vendetta" which included the story she told to Perkins regarding the drugs in the dwelling and she, together with Thurston, placed the hydrocodone in the basement without the defendants' knowledge or consent. They also alleged that Thurston was involved in illegal drug dealing. Both defendants testified that they had no knowledge of the existence of the hydrocodone. They also adduced the testimony of Townsend's son, Phillip Garvey, who allegedly followed Thurston and Hogan into the basement in the vicinity of the hydrocodone several times prior to June 30, 1978, but he never witnessed them handle the jug. Neither party called Thurston to testify.

Following the denial of the defendants' motion for directed verdict, the jury returned guilty verdicts against each defendant. The trial court then sentenced each defendant to 30 months of probation. The court, noting the large amount of drugs confiscated from the defendants' house, Walker's apparent ability to pay the fine and his two prior convictions, ordered him, as a condition of probation, to pay a $9,000 fine in $300 monthly installments.

■■ The defendants' first argument on appeal is that the evidence adduced at trial was insufficient to prove them guilty beyond a reasonable

doubt of possession of narcotics. In order to prove unlawful possession of narcotics the State must establish (1) that the defendants had knowledge of the presence of the narcotics and (2) that the narcotics were within their immediate and exclusive control. (*People v. Nettles* (1961), 23 Ill. 2d 306, 178 N.E.2d 361; Ill. Rev. Stat. 1979, ch. 38, par. 4—2.) They did not dispute the allegations that they owned or controlled the premises that contained the hydrocodone. Instead, they argue that because they were not in exclusive control of the dwelling for a six-day period, the State has failed to meet its burden of proof to show that no one other than the defendants were responsible for the presence of the narcotics. (*People v. Connie* (1964), 52 Ill. App. 2d 221, 201 N.E.2d 641.) Further, they argue that the State failed to demonstrate any facts showing directly or inferentially that the defendants knew of the presence of the hydrocodone. We disagree.

Actual physical possession need not necessarily be demonstrated to sustain a conviction for unlawful possession where constructive possession can be inferred from the facts. (*People v. Scott* (1969), 110 Ill. App. 2d 368, 249 N.E.2d 220.) In *People v. Nettles* (1961), 23 Ill. 2d 306, 178 N.E.2d 361, the court declared that where narcotics are found on the premises under the control of the defendant, this fact alone gives rise to an inference of both knowledge and possession by the defendant which may be sufficient to sustain a conviction for unlawful possession of narcotics, absent other facts and circumstances which might leave in the minds of the jury a reasonable doubt as to the defendant's guilt. The *Nettles* rule is based on "human experience" that narcotics are rarely, if ever, found unaccountably in a person's dwelling. Furthermore, the inference of knowledge and possession may exist even where the defendant has nonexclusive access to the premises. *People v. Mack* (1957), 12 Ill. 2d 151, 145 N.E.2d 609.

The defendants cite *People v. Wolski* (1975), 27 Ill. App. 3d 526, 327 N.E.2d 308, and *People v. Binns* (1975), 27 Ill. App. 3d 978, 327 N.E.2d 369, to support their argument that the evidence adduced by the State was insufficient to infer knowledge of the narcotics in cases such as the one at bar where nonexclusive control of the premises was alleged. In *Wolski* no evidence existed to corroborate the inference of knowledge and possession other than the common ownership of the premises where the contraband was found. The court, referring to *People v. Bell* (1972), 53 Ill. 2d 122, 290 N.E.2d 214, held that the requisite knowledge may be proved by evidence of acts, declarations or conduct associating the defendant with the contraband. In *Binns*, the trial court heard uncontroverted testimony from a 15-year-old boy who admitted that he secretly placed the contraband in the defendant's apartment, then anonymously alerted

the police. The reviewing court, in reversing the conviction, stressed the uncontroverted testimony of the boy and the absence of any corroborating evidence linking the defendant to the contraband.

The present case is not controlled by either *Wolski* or *Binns*. Here the State introduced competent corroborating evidence associating the defendants with the contraband. Hogan's testimony further established their knowledge of the hydrocodone and the immediate and exclusive control which they exercised over it. While the defendants introduced evidence that controverted Hogan's testimony, the credibility of the witnesses and the weight to be afforded contradictory testimony is for the trier of fact to determine. (*People v. Carraro* (1979), 67 Ill. App. 3d 81, 384 N.E.2d 581; *People v. Olmos* (1978), 67 Ill. App. 3d 281, 384 N.E.2d 853.) We can not say that the evidence adduced was so palpably contrary to the verdict, or so unreasonable, improbable or unsatisfactory as to create a reasonable doubt of guilt. *People v. Galloway* (1963), 28 Ill. 2d 355, 192 N.E.2d 370.

Second, the defendants argue that the trial court erroneously denied their motion to suppress evidence because (1) the warrant was based solely upon Hogan's hearsay declarations and the affidavit failed to establish her reliability as required by *Aguilar v. Texas* (1964), 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509, and (2) the complainant omitted facts known to him which tended to demonstrate Hogan's unreliability (*Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674). The Supreme Court in *Aguilar* declared that in order to give a magistrate sufficient factual basis upon which to decide whether probable cause exists where the complainant's affidavit contains out-of-court declarations made by an informant, the affidavit must detail (1) the underlying circumstances showing why the informant's conclusions are believable and (2) why the informant is reliable. In the present case the defendants do not contest the sufficiency of the underlying circumstances showing why Hogan's conclusions were believable because she stated that her information was based on personal observation. (*People v. Blackman* (1978), 62 Ill. App. 3d 726, 379 N.E.2d 344.) The issue is whether the affidavit contained sufficient underlying circumstances for the magistrate to decide whether Hogan was reliable.

The traditional method of proving an informant's reliability is by the affidavit detailing the informant's past record from which the court can then infer reliability. However, in *People v. Hester* (1968), 39 Ill. 2d 489, 514, 237 N.E.2d 466, 481, *cert. denied* (1970), 397 U.S. 660, 25 L. Ed. 2d 642, 90 S. Ct. 1408, the Illinois supreme court declared that "the usual requirement of prior reliability which must be met when the police act upon 'tips' from professional informers does not apply to information

supplied by ordinary citizens." The distinction, in theory, between professional and citizen informants is sound:

"The former are often criminally disposed or implicated, and supply their 'tips' to the authorities on a recurring basis, in secret, and for pecuniary or other personal gain. The latter are innocent of criminal involvement, and volunteer their information fortuitously, openly, and through motives of good citizenship." (*People v. Ramey* (1976), 16 Cal. 3d 263, 268-69, 545 P.2d 1333, 1336, 127 Cal. Rptr. 629, 632.)

Accordingly, ordinary citizen informants are considered presumptively reliable (*People v. Blackman*), as long as the affidavit supporting the warrant contains the name and address of the citizen informant along with a statement of underlying circumstances upon which the informant bases his conclusions. *People v. Martin* (1977), 46 Ill. App. 3d 943, 361 N.E.2d 595.

In attempting to characterize Hogan as a professional or citizen informant, we recognize that these classifications are in fact terms of art that represent opposing ends on a continuum of reliability. In other words, distinction is not an either/or proposition based on the informant's status. For example, in *United States v. Harris* (1971), 403 U.S. 573, 29 L. Ed. 2d 723, 91 S. Ct. 2075, a "professional" informant's reliability was determined without examining his past record where his statement to the police represented an admission against his penal interest because such admissions carry their own indicia of reliability. On the other hand, in *People v. Tatman* (1980), 85 Ill. App. 3d 274, 406 N.E.2d 619, a nominal citizen informant was held to be unreliable after the police recruited her and directed her movements to provide them with information.

■■ In the case at bar, the affidavit gave sufficient circumstances for the trial court to determine that Hogan was a reliable informant, thus meeting the second prong of *Aguilar*. The defendants adduced no evidence establishing the "quid pro quo" of the "suspect" police informer. Hogan did not stand to reap any rewards, pecuniary or otherwise, from her information. (*In re Boykin* (1968), 39 Ill. 2d 617, 237 N.E.2d 484.) The record indicates clearly that she contacted the police on July 17 and 21 entirely upon her own volition. (*People v. Tatman.*) Further, in *People v. Isenberg* (1977), 52 Ill. App. 3d 426, 367 N.E.2d 364, the court rejected an argument similar to that advanced by the defendants here, that the reliability of the nominal citizen informant must be tested by his past performance where the informant was motivated by revenge. Hogan's reliability did not become tainted merely because she allegedly disliked the defendants and as such her statements were self-serving declarations. Quite to the contrary, her statements alleging that illegal contraband was

located in the dwelling in which she also lived could have resulted in her potential criminal liability for possession of narcotics. Her statements were declarations against her penal interest, and, according to *Harris*, such declarations alone are a sufficient basis to determine the informant's reliability. Also, the affidavit cited the informant's name, address, her relationship to the defendants, and the length of time she resided with them. The affidavit in the instant case was based on information from a well-identified witness (*People v. Martin*), who the trial court properly concluded was reliable.

■■ The defendants also argue that the trial court improperly denied their motion to suppress evidence because the complainant Perkins failed to allege facts within his knowledge that would have tended to show the unreliability of the informant Hogan. They allege that Officer Perkins was aware of the tension between Hogan and the defendants and that he recklessly disregarded the truth by failing to include this fact in his affidavit. No constitutional or statutory right exists that allows a defendant to inquire behind the face of the complaint and the warrant, attempting to controvert the matters declared therein. (*People v. Stansberry* (1971), 47 Ill. 2d 541, 268 N.E.2d 431; *People v. Bak* (1970), 45 Ill. 2d 140, 258 N.E.2d 341.) In *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674, the Supreme Court carved out a limited exception to this rule by permitting a defendant to attack a warrant based on deliberate falsehoods or reckless disregard of the truth.

■■ In the present case the defendants allege that by omitting his knowledge that Hogan informed to the police because she was "tired" of the events that were occurring in her family, Officer Perkins demonstrated a reckless disregard of the truth. We can not agree with the defendants. While we agree that an omission may be sufficient to show a deliberate falsehood or reckless disregard (*United States v. Lefkowitz* (C.D. Cal. 1979), 464 F. Supp. 227), the defendants have alleged no facts to demonstrate that the omission was so blatant to constitute reckless disregard as envisioned in *Frank*.

Last, defendant Walker appeals his $9,000 fine on the ground that he was denied a proper sentencing determination because (1) the reasons specified by the trial court were unsupported by the record and (2) the fine imposed was based in part on improper sentencing factors. According to the recent Illinois supreme court case of *People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541, reviewing courts can no longer scrutinize the trial court's sentencing determination under the more rigorous "rebuttable presumption" standard of review found in section 5—5—4.1 of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—4.1). Instead, we must defer to the trial court's decision, absent an abuse of

discretion. *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.

■■ The defendant first argues that the trial court based part of its sentencing determination on a fact not supported by the record where the court noted that the fine imposed was intended to deprive the defendant of his ill-gained profits. (See *People v. Gant* (1974), 18 Ill. App. 3d 61, 309 N.E.2d 265.) This is not the case. Hogan testified that she overheard the defendants scheme to transfer the bulk hydrocodone into smaller bottles and sell it. Although he was not charged with intent to deliver the narcotics, the sentencing court may consider competent and material evidence to aggravate the sentence. *(People v. Crews* (1967), 38 Ill. 2d 331, 231 N.E.2d 451.) Her testimony revealed that the defendant intended to profit from his criminal activity, which is an aggravating factor. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(a)(2).) The trial court did not abuse its discretion in considering Hogan's testimony.

■■ He secondly argues that the Unified Code of Corrections evinces an intent to limit the imposition of fines absent "peculiarly appropriate" circumstances because fines do not have an affirmative rehabilitative value. (Ill. Ann. Stat., ch. 38, par. 1005—9—1(c), Council Commentary, at 520 (Smith-Hurd 1973).) Such an interpretation is untenable after *Cox.* Now a reviewing court may not require the trial court to assiduously follow the dictates of the Unified Code of Corrections, absent an abuse of discretion. According to section 5—6—3(b)(2), the sentencing court may condition probation upon payment of a fine. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—6—3(b)(2).) We note that the $9,000 fine is within the legislatively determined maximum fine of $15,000 for the defendant's Class 3 felony conviction. The court also inquired into his ability to pay a fine and found that at the time of trial he was earning $35,000 annually. The sentencing court sufficiently considered on the record the mitigating and aggravating factors, and, accordingly, we hold that the $9,000 fine was not an abuse of discretion.

Therefore, we affirm the judgment and sentences of the Circuit Court of Will County.

Affirmed.

BARRY and STOUDER, JJ., concur.