THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
MARK A. SEATS *et al.*, Defendants-Appellees.

Fifth District   No. 5—83—0176

Opinion filed February 9, 1984.

Robert W. Matoush, State's Attorney, of Salem (Stephen E. Norris and Raymond F. Buckley, Jr., both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Paul D. Giamanco, of Giamanco & Wexstten, of Mt. Vernon, for appellees.

PRESIDING JUSTICE WELCH delivered the opinion of the court:

The State appeals from an order of the circuit court of Marion County suppressing certain evidence seized from the home of defendants Mark Seats and Tammy Seats during a search conducted pursuant to a search warrant. (87 Ill. 2d R. 604(a).) Three questions are presented by this appeal: (1) Should *Illinois v. Gates* (1983), 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317, be applied retroactively? (2) If so, is the complaint for the search warrant in this case sufficient under *Gates*? (3) Does a "good faith exception" to the fourth amendment apply here? We answer the first two questions affirmatively and need not address the third.

The Sandoval, Illinois, office of registered nurse Eva E. Schuler was burglarized on November 1, 1982. Taken from the office were a black medical bag, a calculator, and assorted medical instruments such as forceps, stethoscopes and a blood-pressure kit. On November 10, 1982, Ray Lee Jones, the assistant chief of police in Sandoval, appeared before a judge of the Fourth Judicial Circuit with a verified complaint for a search warrant. In that complaint, Jones stated that he had received an anonymous phone call from a woman who informed him that the items taken in the burglary of Schuler's office were at 407 North West Second Street in Sandoval. She told Jones that she had seen the defendants carry a black medical bag into the trailer at that location. Jones further averred in the complaint that he had verified that the defendants lived at that address. He also stated that he knew the defendants and neither of them was engaged in any type of medical practice.

As Jones later testified during the defendants' preliminary hearing and the hearing on their suppression motion, no evidence outside the complaint was presented to the judge on November 10. The requested warrant was issued, and certain items were seized from the defendants' trailer. The defendants filed a motion to suppress use of those items at trial. A brief evidentiary hearing was held on March 3, 1983, at which the sole witness was Officer Jones. At the conclusion of the hearing, the court granted defendants' motion. In a written or-

der memorializing its oral pronouncement, the court noted that it had relied upon, *inter alia, Aguilar v. Texas* (1964), 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509, *Spinelli v. United States* (1969), 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584, and *People v. Greer* (1981), 87 Ill. 2d 89, 429 N.E.2d 505.

■ Before deciding whether that order was correct, we must determine whether the fourth amendment analysis set forth in *Illinois v. Gates* (1983), 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317, decided June 8, 1983, should be applied to this case. In *United States v. Johnson* (1982), 457 U.S. 537, 73 L. Ed. 2d 202, 102 S. Ct. 2579, the Supreme Court undertook an extensive review and clarification of its precedents on whether fourth amendment decisions should be retrospectively invoked. Justice Blackmun, in his majority opinion, concluded that, as a general rule, a Supreme Court decision construing the fourth amendment should govern all cases not yet final at the time the decision was rendered.

An exception to this rule occurs when the court expressly declares its decision to be "a clear break with the past." (*Desist v. United States* (1969), 394 U.S. 244, 248, 22 L. Ed. 2d 248, 254, 89 S. Ct. 1030, 1033.) Such a newly announced principle will not be found to be retroactive. Examples of this type of ruling are when the court explicitly overrules its own past precedent, disapproves a practice it had previously sanctioned, or overturns a well-established body of lower court authority. The defendants assert that *Gates* falls into this category of fourth amendment decisions.

Following *Aguilar* and *Spinelli*, many authorities derived a "two-prong" test for assessing the sufficiency of a complaint for a search warrant based on information from a confidential source. First, the magistrate must be presented with facts to show how the informant obtained his information. Second, he must be given some of the underlying circumstances from which the complainant concluded that the informant was credible or his information reliable. In the phraseology of the post-*Aguilar* and *Spinelli* decisions, the first of these requirements was referred to as the "basis of knowledge prong," while the second was labeled the "veracity prong." According to cases such as *People v. Gates* (1981), 85 Ill. 2d 376, 423 N.E.2d 887, each test must be satisfied independently before a complaint for a search warrant would be approved.

In *Illinois v. Gates*, the United States Supreme Court disagreed with that interpretation of *Aguilar* and *Spinelli*. Justice Rehnquist explained in his majority opinion that while questions of the informant's credibility, reliability and the basis of his knowledge are "all

highly relevant in determining the value of his report," those questions are not "entirely separate and independent requirements to be rigidly exacted in every case ***." (*Illinois v. Gates* (1983), 462 U.S. 213, 230, 76 L. Ed. 2d 527, 543, 103 S. Ct. 2317, 2327-28.) The significant issue in determining the applicability of *Gates* to this case is thus whether that reasoning signaled a clean break with past precedent. We do not believe that it did.

First, the court in *Gates* did not explicitly overrule any of its own prior decisions. Indeed, Justice Rehnquist maintained that the analysis employed in *Gates* "is far more consistent with our prior treatment of probable cause than is any rigid demand that specific 'tests' be satisfied by every informant's tip." (462 U.S. 213, 231, 76 L. Ed. 2d 527, 543-44, 103 S. Ct. 2317, 2328.) In a footnote to this statement, he observed that as the language of *Aguilar* indicates, "we intended neither a rigid compartmentalization of the inquiries into an informant's 'veracity,' 'reliability' and 'basis of knowledge,' nor that these inquiries be elaborate exegeses of an informant's tip. Rather, we required only that *some* facts bearing on two particular issues be provided to the magistrate." (462 U.S. 213, 231 n.6, 76 L. Ed. 2d 527, 543 n.6, 103 S. Ct. 2317, 2328 n.6.) Far from abandoning *Aguilar* and *Spinelli*, the *Gates* decision evinces an intent to return to the original propositions contained in those opinions.

Second, the court in *Gates* did not disapprove a practice which it had arguably sanctioned in the past. The majority opinion, in detailing the history of its post-*Aguilar* and *Spinelli* decisions, made plain that the court never adopted the conjunctive "two-prong test" fashioned by other courts and commentators. Nor, in those decisions, did it specifically reject such an approach. However, the absence of any language approving of that test in the Supreme Court's fourth amendment jurisprudence shows that *Gates* did not mark a departure from a practice accepted by the court.

Third, *Gates* was not a major break from a nearly unanimous body of lower court authority. Such a break occurs when a decision overrules clear past precedent or disrupts a practice long accepted and widely relied upon. (*United States v. Johnson* (1982), 457 U.S. 537, 552, 73 L. Ed. 2d 202, 215, 102 S. Ct. 2579, 2588, quoting *Milton v. Wainwright* (1972), 407 U.S. 371, 381-82 n.2, 33 L. Ed. 2d 1, 9 n.2, 92 S. Ct. 2174, 2180 n.2 (Stewart, J., dissenting).) In addition to not discarding any of its own precedent, the court in *Gates* did not expressly overrule lower court authority which applied the "two-prong test." It is also difficult to characterize *Gates* as disrupting practices widely relied upon, because it did not invalidate previously

common police activity. Put another way, any reliance upon pre-*Gates* lower court law could only have been by violators of the law, and that reliance interest is not legitimate. See *People v. Smith* (1983), 95 Ill. 2d 412, 422, 447 N.E.2d 809, 813 (applying *United States v. Ross* (1982), 456 U.S. 798, 72 L. Ed. 2d 572, 102 S. Ct. 2157, retroactively).

■ The Supreme Court's decision in *Gates*, while articulating a method of analysis somewhat different from that used by some courts, set forth a standard ascertainable from its past precedents. Its ruling was based on long-recognized, if occasionally rigidly interpreted, principles of fourth amendment law. Nothing in that decision suggests that it should be treated as an exception to the general rule of retroactivity stated in *Johnson*, and therefore we conclude that *Gates* should be applied here.

The court held in *Gates* that "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." (462 U.S. 213, 238, 76 L. Ed. 2d 527, 548, 103 S. Ct. 2317, 2332.) The magistrate's determination of probable cause must be accorded great deference. (*Spinelli v. United States* (1969), 393 U.S. 410, 419, 21 L. Ed. 2d 637, 645, 89 S. Ct. 584, 591.) And, in order to effectuate the preference for police action taken pursuant to a warrant (*United States v. Ventresca* (1965), 380 U.S. 102, 13 L. Ed. 2d 684, 85 S. Ct. 741), our task as a reviewing court is limited to determining whether there was a substantial basis for concluding that probable cause existed. (*Illinois v. Gates* (1983), 462 U.S. 213, 238, 76 L. Ed. 2d 527, 548, 103 S. Ct. 2317, 2332; *Jones v. United States* (1960), 362 U.S. 257, 272, 4 L. Ed. 2d 697, 709, 80 S. Ct. 725, 737.) It is these principles which we must use in judging the sufficiency of the complaint for a search warrant.

The first fact which is immediately apparent is that the informer relied upon by Officer Jones was anonymous. The People argue that this means that we can presume the informer to have been an "ordinary citizen," and thus reliable. (*People v. Hoffman* (1970), 45 Ill. 2d 221, 258 N.E.2d 326, *cert. denied* (1970), 400 U.S. 904, 27 L. Ed. 2d 141, 91 S. Ct. 142; *People v. Hester* (1968), 39 Ill. 2d 489, 237 N.E.2d 466, *cert. dismissed* (1970), 397 U.S. 660, 25 L. Ed. 2d 642, 90 S. Ct. 1408.) They reason that, unlike the "professional" informant, the anonymous tipster does not stand to benefit from his information. *In re Boykin* (1968), 39 Ill. 2d 617, 237 N.E.2d 484.

The defendants respond that under pre-*Gates* Illinois law, the presumptively reliable status of a citizen informer does not attach to a citizen who does not identify himself. (Compare *People v. Davis* (1980), 86 Ill. App. 3d 557, 407 N.E.2d 1109, with *People v. Townsend* (1980), 90 Ill. App. 3d 1089, 414 N.E.2d 483; *People v. Sylvester* (1980), 86 Ill. App. 3d 186, 407 N.E.2d 1002; *People v. Mitchell* (1979), 68 Ill. App. 3d 370, 386 N.E.2d 153; *People v. Kahl* (1978), 63 Ill. App. 3d 703, 380 N.E.2d 487; *People v. Blackman* (1978), 62 Ill. App. 3d 726, 379 N.E.2d 344.) In *People v. Martin* (1977), 46 Ill. App. 3d 943, 950, 361 N.E.2d 595, 600, the court quoted the following explanation for that rule.

> " 'The courts have recognized a distinction between informers who are virtual agents of the police and 'citizen informants' who are chance witnesses to or victims of crime. The former are often criminally disposed or implicated, and supply their 'tips' to the authorities on a recurring basis, *in secret*, and for pecuniary or other personal gain. The latter are innocent of criminal involvement, and volunteer their information fortuitously, *openly*, and through motives of good citizenship. [Citations.] Because of these characteristics, the requisite showing of reliability in the case of a citizen informant is significantly less than that demanded of a police informer.' " (Emphasis added.) (*People v. Ramey* (1976), 16 Cal. 3d 263, 268-69, 545 P.2d 1333, 1336, 127 Cal. Rptr. 629, 632.)

The reasoning stated in *Martin* certainly survives *Gates*. There, Justice Rehnquist said that rigorous scrutiny of an informant's basis of knowledge is unnecessary if "an unquestionably honest citizen *comes forward* with a report of criminal activity—*which if fabricated would subject him to criminal liability* \*\*\*." (Emphasis added.) *Illinois v. Gates* (1983), 462 U.S. 213, 233, 76 L. Ed. 2d 527, 545, 103 S. Ct. 2317, 2329; *cf. Adams v. Williams* (1972), 407 U.S. 143, 146, 32 L. Ed. 2d 612, 617, 92 S. Ct. 1921, 1923 (information given by a citizen known to authorities furnishes "a stronger case than obtains in the case of an anonymous telephone tip").

■ An anonymous informant has no inherent motive to lie, as often does the so-called "professional" informant, who is frequently rewarded with leniency or cash. On the other hand, the anonymous informant is not inherently constrained to tell the truth, as is the identified "ordinary citizen," who could be penalized for misleading the police. These concerns prompt us to decline to apply any presumption of reliability to the anonymous informant. To do so would also be at odds with the Supreme Court's conclusion that the anonymous let-

ter in *Gates*, standing alone, would not provide probable cause for a search warrant. *Illinois v. Gates* (1983), 462 U.S. 213, 227, 76 L. Ed. 2d 527, 541, 103 S. Ct. 2317, 2326.

The authorities cited by the People do not justify invocation of the "citizen informant rule" here. In *People v. Carton* (1981), 95 Ill. App. 3d 937, 420 N.E.2d 753, the informant, although not identified to the magistrate, actually had personal dealings with the affiant police officer. The informant was, if not completely identified to the authorities, at least recognizable by them, and not completely anonymous. It is not apparent whether the informant in *People v. Williams* (1978), 62 Ill. App. 3d 874, 379 N.E.2d 1222, was known to the police, but to the extent that some language in *Williams* may suggest that a presumption of reliability should attach to the report of an anonymous informer, it is not in accord with the policies advanced in *Gates*.

However, to conclude that an anonymous tip carries no special attributes of truth does not end the inquiry in this case. The "veracity of persons supplying anonymous tips is by hypothesis largely unknown, and unknowable. *** Yet, such tips, particularly when supplemented by independent police investigation, frequently contribute to the solution of otherwise 'perfect crimes.' While a conscientious assessment of the basis for crediting such tips is required by the Fourth Amendment, a standard that leaves virtually no place for anonymous citizen informants is not." (*Illinois v. Gates* (1983), 462 U.S. 213, 237, 238, 76 L. Ed. 2d 527, 548, 103 S. Ct. 2317, 2332.) The ultimate question in this case, as it was in *Gates*, is thus whether the anonymous information was sufficiently corroborated to give rise to a fair probability that the described property was where the informant said it was.

Initially, we observe that, in the language of the pre-*Gates* decisions, the informant's "basis of knowledge" was personal observation. She mentioned that she saw some of the stolen property. This allegation in the complaint eliminates the possibility that the information could "have been heard at a neighborhood bar, or possibly, could have been heard on a local news broadcast, or could have been read in the paper." *People v. Greer* (1981), 87 Ill. 2d 89, 94, 429 N.E.2d 505, 507.

Moreover, much of what the informant told Officer Jones was substantiated by him from other sources. She stated that she had seen a black medical bag, and one had in fact been taken from Nurse Schuler's office. She indicated that the defendants lived at 407 North West Second Street in Sandoval, and so they did. These facts can be added to information known to Officer Jones and presented to the issuing magistrate. Jones knew that the defendants were not engaged in the

practice of medicine in any way, and possession by them of such an unusual item as a black medical bag under ordinary circumstances would be unlikely. It was also apparent to the magistrate that Sandoval is a small rural town, not a metropolitan area.

■ No single detail listed above would suffice to establish probable cause for the issuance of a warrant. But when the facts presented to the magistrate are considered together, they create a fair probability that the stolen property would be discovered in the defendants' residence. We conclude that the magistrate's decision to issue a warrant had a substantial basis in the facts presented to him. Accordingly, the order of the circuit court of Marion County granting defendants' suppression motion must be reversed and this cause remanded for further proceedings.

Reversed and remanded.