693 P.2d 458

STATE of Idaho, Plaintiff-Appellant,

v.

Robert SCHAFFER and Sara Schaffer, Defendants-Respondents.

No. 14711 to 14714.

Court of Appeals of Idaho.

Nov. 29, 1984.

**814**

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Steven W. Berenter, Deputy Atty. Gen., Boise, for plaintiff-appellant.

Charles Sheroke, Coeur d'Alene, for defendants-respondents.

BURNETT, Judge.

This is an appeal by the state from an order suppressing evidence and dismissing criminal charges in four consolidated cases. The district court held that certain evidence should be suppressed because it had been seized under a search warrant issued without probable cause. The court also held that the charges should be dismissed because one of the accused persons, Robert Schaffer, had been placed in custody, without an arrest warrant and without probable cause, when the search began. For reasons explained below, we vacate the district court's order and remand the cases.

The issues generated by suppressing the evidence and by dismissing the charges share a common nucleus in the fourth amendment to the United States Constitution. The amendment provides as follows:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Similar, though not identical, language appears in Article 1, § 17, of the Idaho Constitution. The Idaho Supreme Court has held that the state's constitutional provision "is to be construed consistently with the fourth amendment...." *E.g., State v. Cowen*, 104 Idaho 649, 650, 662 P.2d 230, 231 (1983). This policy of parallelism signifies, in effect, that the meaning of Article 1, § 17, is decided not by Idaho courts but by the United States Supreme Court. We may not agree with this policy, but we are bound by it.

Accordingly, our opinion today turns upon recent decisions by the United States Supreme Court interpreting the fourth amendment. As will be seen, these decisions present nettlesome problems of interpretation and application. Our discussion also suggests that these cases, taken together, have diluted the importance of probable cause as an anchor concept in fourth amendment jurisprudence.

### I. Prearrest Detention: The *Summers* Issue

Because the dismissal of charges presents a threshold question, we turn to it first. Having obtained a warrant, the sheriff of Boundary County led a contingent of law enforcement officers and a news reporter upon a search for marijuana at the home of Robert and Sara Schaffer. When the officers arrived, Robert Schaffer met them outside, near their vehicles. They showed him the search warrant, handcuffed him and detained him in a police car while the search was conducted. Some ninety minutes later, the officers advised Schaffer that he was under arrest. Charges of possessing and "manufacturing" marijuana, a controlled substance, ultimately were filed against Schaffer and his wife.

The Schaffers moved the district court to suppress evidence seized during the search. At a hearing on this motion they also requested dismissal of the charges as a sanction for the allegedly illegal detention of Mr. Schaffer before his arrest. For reasons made apparent in the next section of our opinion, the judge found that the prearrest detention was unsupported by probable cause. He treated the detention as a form of premature arrest, noting that it met none of the criteria for warrantless arrests under I.C. § 19–603. He further

observed, correctly, that the detention represented a seizure of Schaffer's person within the meaning of the fourth amendment. Reasoning by analogy to *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), the judge held the prearrest detention unconstitutional.

*Payton* contains a strong affirmation of fourth amendment values. However, we believe the judge's reliance upon it was misplaced. In *Payton* the Supreme Court held that a warrantless, nonconsensual entry by police into a suspect's home, for the purpose of making a routine arrest, violated the fourth amendment and clothed the police with no authority to seize evidence while in the home. In contrast, the police in this case did not go to the Schaffer home to make a routine felony arrest, nor did they enter the home upon any pretext connected with such an arrest. Rather, they went to the home for the purpose of executing a search warrant. The formal arrest following the search was based upon crimes disclosed during the search itself. That arrest was not routine within the meaning of *Payton.*

■ In our view, this case is more closely analogous to *Michigan v. Summers,* 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). In *Summers* several occupants of a home were detained by police while a search warrant was executed. The warrant authorized a search for narcotics, and drugs were found on the premises. An owner-occupant of the home then was arrested and searched, revealing more drugs in his coat pocket. He later moved to suppress the contraband taken from his pocket. He contended that it was the fruit of a search of his person, which had been made possible only by initially detaining him without an arrest warrant at a time when there was no probable cause linking him to a crime. The Supreme Court upheld the prearrest detention despite an assumed

lack of probable cause. The Court based its decision upon two rather different hypotheses. The first was that although every deprivation of liberty is a "seizure" under the fourth amendment, not every detention requires probable cause. The second was that the search warrant had been issued upon probable cause to believe there were narcotics in the house. The Court reasoned that because a magistrate had authorized the invasion of privacy necessarily occasioned by a search of the home, it was not an unreasonable imposition upon the occupants to be held in custody while the search was conducted. The Court concluded that a warrant to search a home for contraband, founded upon probable cause, implicitly carries with it a limited authority to detain occupants of the premises while a proper search is conducted. *Id.* at 703–05, 101 S.Ct. at 2594–96.

In the present case the police did not detain Schaffer in his house; they handcuffed him and put him in a squad car. However, this factual distinction is beside the point of the instant appeal. It was the fact of detention without probable cause, not the manner of detention, which moved the district court to rule that an unlawful seizure had occurred. The court made no finding that the degree of restraint was disproportionate to the circumstances. The officers testified that they felt Schaffer might be dangerous, that firearms were found in the house, and that an ax had been observed in a woodpile near the location where Schaffer first confronted the police vehicles.

Upon this record we believe *Summers* is applicable. Therefore, if the search warrant was founded upon probable cause, the detention was permissible. We now turn to that question.[1]

## II. Probable Cause: The *Gates* Question

### A

The facts framing the issue of probable cause may be summarized briefly. The

---

1. In Part IV, *infra,* we discuss a possibility that the search warrant could be found defective for lack of probable cause but that the evidence could be admitted under an exception to the fourth amendment exclusionary rule. In such event, a question would arise concerning the appropriateness of dismissing charges as a sanction for a detention unsupported by probable cause. However, we deem that issue to be premature, in the present posture of the case, and we do not reach it in today's opinion.

sheriff received two telephone calls, approximately a week apart, from an anonymous "tipster." The caller stated that he had been in the Schaffer home and had observed marijuana growing in a greenhouse attached to the main residence. After the second telephone conversation, the sheriff and an officer from the Idaho Department of Fish and Game drove to a location approximately one mile from the Schaffer home. There they scanned the home with a "spotting scope." They noticed that the greenhouse appeared to contain tall plants; but because the greenhouse was constructed of opaque material, they could not identify any plants as marijuana.

The next day the sheriff appeared with the fish and game officer before a magistrate to request a search warrant. They testified under oath about the telephone calls and about their observations of the property. They also stated that the Schaffers were rumored to be dealing in marijuana. Finally, the sheriff testified that when one of his deputies recently had accompanied the county assessor to the Schaffer residence, the Schaffers had met them at their vehicle and had denied them access to the residence. The magistrate, expressly reciting that he relied upon all this information, found probable cause and issued the search warrant.

When the suppression hearing later was conducted, the sheriff acknowledged that the credibility of the "tipster" and the basis of his knowledge were entirely unknown. He also conceded that the rumors about the Schaffers' involvement in marijuana had been generalized and wholly unsubstantiated. Most importantly, the sheriff admitted that the encounter between the Schaffers and the county assessor, when the assessor and a deputy supposedly had been denied access to the residence, had not really occurred. The assessor testified that he had gone to the Schaffer place on one occasion but had not been accompanied by the deputy and had not been denied access to the residence. He stated that he had neither requested nor received an invitation to look inside the home or the attached greenhouse.

Upon this evidence the district judge found that the sheriff had procured a warrant without probable cause. The judge's view of the case is set forth in this excerpt from his memorandum decision:

The action taken by the Boundary County Sheriff in obtaining and executing a Search Warrant in this case makes it necessary for the Court to Order that all marijuana seized from the Defendant's possession be suppressed and not used as evidence.

This is the type of a case that is confusing to the general public and causes the public to [lose] confidence in our Court system.

The Boundary County Sheriff did not have probable cause to enter the Defendant's property to search the same, nor to make an arrest, but by virtue of a wrongful entry, marijuana was in fact discovered.

It is difficult for the general public to understand what difference a wrongful entry onto the Defendant's property would make where in fact, a criminal act is found to exist.

The end result does not justify the means used to obtain that result, when our most basic constitutional guarantees are violated.

The Fourth Amendment of the United States Constitution and Article I, Section 17 of the Idaho Constitution provide for the right of *all people* to be secure in their person [sic] and house [sic] from all unreasonable searches and seizures, and *no warrant shall issue without probable cause.*

The purpose of these Constitutional provisions is to insure the privacy of all citizens against searching their premises where probable cause is lacking and from unjustified forcible intrusions by the State. [Citation omitted.]

"Every householder, the good and the bad, the guilty and the innocent is entitled to the protection designed to secure the common interest against un-

lawful invasion of the house." [Citation omitted.] * * * * *

In this case, the Sheriff obtained a Search Warrant based on anonymous tips, rumors and speculation, and not on probable cause. [Emphasis original.]

### B

The district judge's analysis of probable cause was grounded largely upon the *Aguilar-Spinelli* standard then extant. In *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), the Supreme Court announced a two-pronged test for determining whether hearsay information from an undisclosed informant could be used in establishing probable cause. This test, as supplemented in *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), required the government to show the veracity of the informant and the basis of his knowledge. The government could demonstrate veracity either through the general credibility of the informant or through the reliability of the particular information provided. The basis of the informant's knowledge also could be demonstrated in two ways—directly, by a statement describing the underlying circumstances from which the informant obtained his information, or indirectly, by the inclusion of such detail that the information became self-verifying. *The Supreme Court, 1982 Term,* 97 HARV.L.REV. 177, 178 (1983).

■ While the instant appeal was pending, the Supreme Court abandoned the *Aguilar-Spinelli* standard. In *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Court reverted to a less structured "totality of circumstances" test. The Court denounced the *Aguilar-Spinelli* standard as unduly rigid because it failed to recognize that probable cause is a "fluid" concept in which the "veracity" and "basis of knowledge" prongs are intertwined and are not "unflexible, independent requirements applicable to every case." *Id.* at 230–31 n. 6, 103 S.Ct. at 2328 n. 6. Judges reviewing probable cause determinations were abjured to determine sim-

ply whether a "substantial basis for concluding probable cause existed." *Id.* at 238–39, 103 S.Ct. at 2332. Although conclusory statements by an unnamed informant would not suffice to show probable cause, other information gathered by independent investigation might provide the additional quantum of evidence required.

■ The *Gates* decision does not explicitly state whether the "totality of the circumstances" test should be applied retroactively to cases like this one, where the original determination of probable cause was made under *Aguilar-Spinelli*. However, the Court in *Gates* applied the new test to the case at hand. Moreover, the Supreme Court earlier said in *United States v. Johnson*, 457 U.S. 537, 560, 102 S.Ct. 2579, 2592, 73 L.Ed.2d 202 (1982), that unless a construction of the fourth amendment constitutes a "clear break with the past," it should be applied to all convictions not yet final. Since *Gates* was decided, those courts which have explicitly addressed the retroactivity question have held that *Gates* does not represent an entirely new or unanticipated body of law. Therefore, it may be applied retroactively. *E.g., United States v. Mendoza*, 727 F.2d 448 (5th Cir.1984); *State v. Espinosa-Gamez*, 139 Ariz. 415, 678 P.2d 1379 (1984); *People v. Seats*, 121 Ill.App.3d 637, 77 Ill.Dec. 251, 460 N.E.2d 110 (1984), *cert. denied,* — U.S. —, 105 S.Ct. 294, 83 L.Ed.2d 230 (1984). Idaho, too, has applied *Gates* retroactively. *See State v. Lang*, 105 Idaho 683, 672 P.2d 561 (1983); *State v. Fowler*, 106 Idaho 3, 674 P.2d 432 (Ct.App.1983).

■ *Gates* is more than a mere refinement of *Aguilar-Spinelli*. *See Massachusetts v. Upton*, — U.S. —, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984). But the fact that *Gates* widely has been given retroactive effect suggests that it does not represent a "clear break" from *Aguilar-Spinelli*. The two-pronged standard is not to be forgotten. *Aguilar-Spinelli* remains a useful first step in evaluating probable cause where the information is derived, at least in part, from an undisclosed informant. Moylan, *Illinois v. Gates, What It*

*Did and What It Did Not Do,* 20 CRIM.L. BULL. 93 (1984). In determining whether there is a "substantial basis for concluding probable cause existed," as denoted in *Gates,* we deem it appropriate to inquire, as would a magistrate, "Where did this unnamed person get his information?" and "Is he likely to be telling the truth?" Those, in essence, are the *Aguilar-Spinelli* questions.

In this case the Boundary County Sheriff did not know where the anonymous caller got his information, other than the caller's own bare assertion that he had been in the Schaffer home. Neither did the sheriff know whether the caller was likely to be telling the truth. There was no self-verifying detail in the caller's information. The sheriff also was unable to substantiate any of the general rumors about the Schaffers' prior involvement with marijuana. We deem it clear that this information, while perhaps not to be wholly disregarded in evaluating the "totality of circumstances," is entitled to little weight. Moreover, the independent investigation by the sheriff and the fish and game officer merely confirmed that the Schaffers had a greenhouse with tall, unidentified plants growing in it. We cannot say that the sum of this information would have provided a "substantial basis" for finding probable cause.

As we have noted, the magistrate did not consider this information to be sufficient either. He was careful to state that he had relied upon all the evidence presented, including the testimony about the county auditor and a deputy sheriff being denied access to the residence. The question, then, is whether this story must be credited among the "totality of circumstances."

### III. False Information: The *Franks* Problem

#### A

On the surface, it might seem obvious that false information never should be considered in reviewing a finding of probable cause. *However, the issue is more subtle than it appears.* The question is not whether a magistrate should issue a warrant upon information he believes to be untrue. No one suggests that he should. Rather, the question is whether the person accused of a crime, against whom probative evidence has been gathered under a warrant, should be entitled to impeach the sworn testimony given at the ex parte probable cause hearing, in the hope of invalidating the warrant and suppressing the evidence. The answer to this question depends largely upon one's view of the importance of probable cause to the fourth amendment.

The amendment, quoted fully at the outset of our opinion, provides in part that "no warrant shall issue, but upon probable cause, supported by oath or affirmation...." This clause may be viewed either to require that warrants actually be supported by probable cause or merely to require that the oath or affirmation be sufficient on its face to show probable cause. The former view, emphasizing probable cause in fact, treats the existence of probable cause as the pivot upon which the public's interest in law enforcement is balanced against the individual's right to privacy. Expressions of this view may be found in Supreme Court decisions. *E.g., Henry v. United States,* 361 U.S. 98, 100, 80 S.Ct. 168, 169, 4 L.Ed.2d 134 (1959); *Brinegar v. United States,* 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949). The latter view, however, suggests that the balance is struck not by probable cause but by the process of obtaining a warrant from an impartial and detached magistrate. This view also has been expressed in Supreme Court decisions. *E.g., Johnson v. United States,* 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948).

In theory, these views are not mutually exclusive. Probable cause would be an empty concept without an impartial magistrate to apply it, and the impartiality of the magistrate would be an illusion without the discipline of finding genuine probable cause. But in practice, a tension exists between these components of the fourth amendment. The more we emphasize the importance of probable cause, the less like-

ly we are to uphold a defective warrant simply because a magistrate was induced to issue it. Conversely, the more we emphasize the role of the magistrate, the less likely we are to invalidate the warrant simply because it was issued without probable cause.

The plain language of the amendment itself, which expressly mentions probable cause but refers to a magistrate only by implication, strongly suggests that the courts should emphasize the result, as well as the process, of determining probable cause. Indeed, James Madison's draft of the amendment, which won approval in the First Congress, stated that "[t]he right of the people to be secured [sic] in their persons, houses, papers, and effects, *shall not be violated by warrants issuing without probable cause,* supported by oath or affirmation . . . ." (Emphasis added.) This language plainly shows that a warrant issued without probable cause was regarded as an evil. Historical research indicates that the syntactical difference between Madison's approved draft and the present amendment is due only to an error in reporting constitutional amendments as passed by the First Congress. *See* J. LANDYNSKI, SEARCH AND SEIZURE AND THE SUPREME COURT 41–42 (1966). Nevertheless, as the following discussion reveals, those who place greater emphasis upon the role of the magistrate, and who believe the fourth amendment is not necessarily offended by a lack of probable cause, have attracted the Supreme Court to their view.

B

In *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Supreme Court squarely faced the problem posed by the use of false evidence to establish probable cause. The Court held that such evidence could not be impeached unless it had been presented knowingly and intentionally, or with reckless disregard for the truth. The Court's focus upon the role of the magistrate is illustrated by the following comment in the Court's opinion:

Because it is the magistrate who must determine independently whether there is probable cause [citations omitted] it would be an unthinkable imposition upon his authority if a warrant affidavit, revealed after the fact to contain a deliberately or recklessly false statement, were to stand beyond impeachment.

438 U.S. at 165, 98 S.Ct. at 2681. The underlying requirement of probable cause was recast narrowly as a limitation upon improper police conduct:

The requirement that a warrant not issue 'but upon probable cause, supported by Oath or affirmation,' would be reduced to a nullity if a police officer was able to use deliberately falsified allegations to demonstrate probable cause and, having misled the magistrate, then was able to remain confident that the ploy was worthwhile.

438 U.S. at 168, 98 S.Ct. at 2682.

The common thread running through these excerpts from *Franks* is that so long as the police did not act in bad faith to mislead a magistrate, a warrant would not be disturbed simply because it is unsupported by genuine probable cause. With the benefit of hindsight, we now can see that *Franks* contained the seed of a "good faith" exception to the fourth amendment exclusionary rule. But when it was announced, *Franks* encountered little dissension. Many states other than Idaho already had erected barriers to impeachment of false probable cause affidavits. *See* Annot., 5 A.L.R.2d 394 (1949).

The Idaho Supreme Court adopted *Franks* in *State v. Lindner,* 100 Idaho 37, 592 P.2d 852 (1979). That case involved an innocuous set of circumstances. A police officer stated in his probable cause affidavit that an informant had given him a specific address where controlled substances would be delivered. In fact the informant had identified the property simply by naming its owner and the police officer, who knew the owner and the address of the property, inadvertently attributed the information about the address to the informant. There was nothing substantively

untrue about the officer's affidavit. Consequently, it might have been unnecessary to invoke *Franks* in order to uphold the validity of the warrant. But the Supreme Court elected to employ *Franks* and in so doing established the rule in Idaho that false evidence, without which probable cause would not have been found, does not invalidate a warrant unless it was presented intentionally or with reckless disregard for the truth. A "negligent misrepresentation," even if necessary to the finding of probable cause, does not affect the validity of the warrant. 100 Idaho at 41, 592 P.2d at 856.

Therefore, we must apply *Franks* to the instant case. The question is whether the sheriff acted intentionally, recklessly, negligently or innocently when he presented false information to the magistrate. The district judge characterized the sheriff's subsequent testimony at the suppression hearing as a statement that "he had been mis-informed." But the judge made no specific finding as to his own view of the matter nor as to whether the sheriff, if misinformed, had presented the false information recklessly, negligently or innocently.[2]

■ The judge may have deemed it unnecessary to probe this issue in light of the clear result suggested at the time by the *Aguilar-Spinelli* standard. However, in place of that objective standard, the Supreme Court has furnished us a test of probable cause which turns in part, through the interplay of *Gates* and *Franks*, upon the state of mind of the Boundary County Sheriff. If the sheriff acted innocently or negligently in presenting false information to the magistrate, the story is beyond impeachment and must be included in the "totality of circumstances" considered in determining whether the magistrate had a "substantial basis" to find probable cause. Conversely, if the false information was given intentionally, or was the product of a reckless disregard for the truth, then it must be set aside and the magistrate's finding of probable cause must be reviewed upon the remaining evidence. *Franks v. Delaware*, 438 U.S. at 172, 98 S.Ct. at 2684. In that event, as we have noted, the magistrate's finding would lack a "substantial basis."

Having identified these alternatives, we remand for a particular finding on the *Franks* question. The answer to that question will dictate, in turn, the outcome of the probable cause review under *Gates*. However, a final question remains. If the warrant is found to be unsupported by probable cause, should the evidence nevertheless be admitted under a "good faith" exception to the exclusionary rule? We now turn to that question.

## IV. Exclusion of Evidence: The *Leon* Rule

### A

■ In *United States v. Leon*, —— U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Supreme Court adopted a limited good faith exception. The Court held that when a search warrant has been obtained and executed by the police in good faith, the fourth amendment exclusionary rule may not be invoked to suppress evidence merely because the warrant is later found defective for lack of probable cause. The underlying premise of *Leon* is that the exclusionary rule exists solely to deter the police from wrongful conduct, and no such purpose can be served if the police have acted in good faith. The Supreme Court also has taken the position in *Leon* that the exclusionary rule is not a constitutional adjunct of the fourth amendment but is merely a judicial prophylaxis to be employed according to the Court's perception of the social costs and benefits ascribed to it.

---

**2.** By focusing on the sheriff in this discussion, we do not necessarily suggest that false information knowingly or recklessly provided to the probable cause affiant by another law enforcement officer would be immune to impeachment merely because it was presented to the magistrate through an intermediary. *Franks* appears to leave this question open or is, at least, ambiguous: "The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not that of any *nongovernmental informant*." 438 U.S. at 171, 98 S.Ct. at 2684. (Emphasis added.)

Although *Leon* has much in common philosophically with *Franks*, it would appear to be a clearer "break with the past" than was *Gates*. However, in *Leon*, as in *Gates*, the Supreme Court imposed its new rule of law to the case at hand and announced no limitation upon retroactivity. Therefore, we will assume that *Leon* may be applied to the instant case. *See, e.g., United States v. Sager*, 743 F.2d 1261 (8th Cir.1984).

Of course, the Idaho Supreme Court has not yet subscribed to *Leon*, as it has to *Gates* and *Franks*. Our Supreme Court may do well to defer this choice for a reasonable time, until the federal experience under *Leon* can be evaluated.[3] However, the instant case cannot await this determination. We must decide the case now, and we deem ourselves constrained to do so in compliance with our Supreme Court's declaration that the search-and-seizure provision of the Idaho Constitution is to be construed consistently with the fourth amendment. *Leon* represents the latest construction of the fourth amendment. Accordingly, we will consider the implications of *Leon* for this case, but we intimate no view that *Leon* ultimately should be adopted in Idaho.

**B**

■ The district court upon remand could determine that the sheriff's false testimony was innocent or merely negligent, and that a "substantial basis" existed under *Gates* to find probable cause. In that event the warrant would be upheld ánd there would be no need to apply *Leon*. However, the court also might determine, on one of two possible grounds, that no "substantial basis" existed. First, the court could find that the sheriff's false testimony was intentional, or given with reckless disregard of the truth, and that without such testimony the evidence of probable cause was insufficient to satisfy

*Gates*. Alternatively, the court might find the evidence insufficient under *Gates* even if the false testimony were not disregarded. In either of those events, the warrant would be invalid. The exclusionary rule would apply unless barred by *Leon*.

The scope of *Leon* is limited by a cluster of exceptions:

> Suppression ... remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth. *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674 [57 L.Ed.2d 667] (1978). The exception we recognize today will also not apply in cases where the issuing magistrate wholly abandoned his judicial role in the manner condemned in *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 99 S.Ct. 2319 [60 L.Ed.2d 920] (1979); in such circumstances, no reasonably well-trained officer should rely on the warrant. Nor would an officer manifest objective good faith in relying on a warrant based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Brown v. Illinois*, 422 U.S. [590], at 610–611, 95 S.Ct. 2254 [at 2265–2266, 45 L.Ed.2d 416 (1975)] (Powell, J., concurring in part); see *Illinois v. Gates*, supra, [462 U.S.] at [262–263], 103 S.Ct. at [2345] (White, J., concurring in the judgment). Finally, depending on the circumstances of the particular case, a warrant may be so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid. Cf. *Massachusetts v. Sheppard*, [——] U.S. at [——], 104 S.Ct. at [3424].

*United States v. Leon*, —— U.S. at ——, 104 S.Ct. at 3421–22. The first of these

---

3. Idaho is not necessarily bound by the narrow, punitive purpose the United States Supreme Court now attributes to the federal exclusionary rule. A state exclusionary rule may be upheld upon broader, more constructive purposes. *See*

*State v. Rauch*, 99 Idaho 586, 586 P.2d 671 (1978); *State v. Lewis*, 106 Idaho 800, 683 P.2d 448, (Ct.App.1984) *overruled on other grounds, State v. Lewis*, 107 Idaho 616, 691 P.2d 1231 (1984).

exceptions is based explicitly upon *Franks*. But we presume the Supreme Court did not intend to create a blanket exception for every case exhibiting a *Franks* problem. As we have observed, the Supreme Court in *Franks* said that a deliberate falsehood, or information given with reckless disregard for the truth, does not invariably vitiate the warrant. Rather, the false testimony simply must be set aside and a determination then made as to whether there remains sufficient content in the sworn testimony before the magistrate to support a finding of probable cause.

If the magistrate's finding in this case had been based solely upon a deliberate or reckless falsehood, there would be nothing left to examine after setting the falsehood aside. The *Franks*-based exception to *Leon* would be dispositive. But the magistrate made his finding of probable cause upon all the information provided, including that received from the anonymous "tipster," the unverified rumors and the observation of the greenhouse. The existence of such other information removes the case from the *Franks*-based exception. The exclusionary rule will be barred unless another exception to *Leon* applies.

As quoted above, *Leon* provides such an exception when the affidavit or sworn testimony is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." We confess that we are unsure how this quantum of evidence compares to the level needed to support a probable cause determination under *Gates*. It splits a fine hair indeed to say that the evidence is so deficient there is no "substantial basis" to find probable cause under a "totality of circumstances," but that the evidence still is not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." For the vast majority of situations, it would appear that the Supreme Court in *Gates* and *Leon* has killed one bird with two stones. Only in an exceptionally narrow band of cases would the evidence fall short of the *Gates* standard yet be sufficient to permit a reasonable official belief in probable cause as denoted in *Leon*.

In our view, the instant case will fall outside, and below, this narrow band if the district court on remand finds that the false testimony should be disregarded and that no probable cause exists without it. No objectively reasonable, well-trained and conscientious law enforcement officer could believe that probable cause had been established by the remaining information—the general and unsubstantiated rumors, the anonymous telephone calls and an observation of unidentified plants. Under the reasonable official belief exception to *Leon*, the exclusionary rule would be imposed. But if the district court finds no probable cause under *Gates*, even without disregarding the false testimony, we are constrained to say that a different result would follow. After all, the magistrate found probable cause upon the same totality of evidence. If a magistrate could make such a finding, we are loathe to suggest that official belief in the existence of probable cause would have been entirely unreasonable. The case, if viewed in this light, would fit within the narrow band created by *Gates* and *Leon*. The exclusionary rule could not be imposed.

When such a profound difference in the result turns upon such a subtle variation in the analysis, we have cause for concern that the fourth amendment is becoming enmeshed in a network of fine distinctions. We also are reminded how delicately the police power of the state is balanced against the right of all people to be secure in their homes. As probable cause is relegated to a lesser place in the fourth amendment, the impact of magistrate decisions upon this critical balance will grow. That, in the final analysis, is the lesson of *Leon*.

The order of the district court, suppressing the evidence and dismissing the charges, is vacated. The cases are remanded for further proceedings consistent with this opinion.

WALTERS, C.J., and SWANSTROM, J., concur.